## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Steelmantown Church, Edward Bixby, Loving Earth Memorial Gardens, LLC, and Matthew Connell,

          Plaintiffs,

   v.

Carlton County, Minnesota, Carlton County Commissioners Sarah Plante Buhs, in her official capacity, or her successors, Marv Bodie, in his official capacity, or his successors, Thomas R. Proulx, in his official capacity, or his successors, Susan Zmyslony, in her official capacity or her successors, Dan Reed, in his official capacity or his successors, and Kristine Basilici, Carlton County Recorder of the Carlton County Recorder's Office, or her successors, and Chris Berg, Carlton County Zoning and Environmental Services Administration, or his successors,

          Defendants.

Court File No.  25-CV-2323

**COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1.      Death strikes a family to the heart. Any subsequent funeral service allows for those mourning of the loss of a loved one to seek closure and deal with grief. Some do so with burials; others with cremation. Either way gives people a time for a proper goodbye. And with the final resting place, a cemetery provides the emotional and spiritual comforts of the natural surroundings that can be keenly felt.

2.      Steelmantown Church, a non-profit religious corporation provides for those natural surroundings through natural burials, sought by hundreds of people throughout the United States and in Minnesota. Working with Loving Earth Memorial Gardens, LLC, Steelmantown and Loving Earth found property, zoned for specifically for cemeteries in Carlton County, Minnesota. Steelmantown Church, through Loving Earth, submitted for recording a statutory compliant plat and survey for a private cemetery with the Carlton County Recorder's Office.  On the eve of recording, the Carlton County Recorder refused to record the documents. Carlton County officials knowingly and maliciously improperly and illegally rejected and refused to accept and record Steelmantown Church's recording documents under Minn. Stat. ch. 307 claiming the Church needed to open as a public cemetery governed under entirely different statutory authority, Minn. Stat. ch. 306, which is not applicable to Steelmantown's private cemetery.

3.      Meanwhile, as alleged, the state imposed a moratorium on natural burial cemeteries, however, the moratorium did not and does not affect Steelmantown Church. Regardless, the moratorium expires in July 2025.

4.      As alleged, Carlton County's denial to record Steelmantown Church's property survey for a private cemetery, violated the constitutional rights under the Free Exercise and Establishment Clauses of the First Amendment (and the Minnesota Constitution) and the statutory rights of Steelmantown Church including having violated the Religious Land Use and Institutionalized Persons Act.

5.      Steelmantown Church and Loving Earth seek declaratory and injunctive relief mandating that Carlton County record all plat survey documents under Minn. Stat. ch. 307,

that would grant Steelmantown Church, through Living Earth, to use the Church's acquired land within the County as a private cemetery to conduct natural burials.

## JURISDICTION AND VENUE

6.    **Jurisdiction.** This Court has jurisdiction under 28 U.S.C. § 1331 (federal-question jurisdiction), 28 U.S.C. § 2201 (declaratory-judgment jurisdiction), and 42 USC §§ 1983, 1988 (civil-rights statutes) for the appropriate federal claims.  Supplemental jurisdiction over state law claims is also found under 28 U.S.C. § 1367.

7.    A U.S. District Court for the District of Minnesota wrote in *Mille Lacs Band of Ojibwe v. Cnty. of Mille Lacs, Minnesota,* 650 F. Supp. 3d 690, 707 (D. Minn. 2023), and as accurately quoted in part, regarding county sovereign immunity "'[s]overeign immunity, however—as well as the *Ex parte Young* exception to it—generally applies only to state officials, not county officials.' *Schultz v. Alabama*, 42 F.4th 1298, 1314 (11th Cir. 2022) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280 (1977) (noting that Eleventh Amendment immunity does not extend to counties and similar municipal corporations.))."

8.    **Venue.** Venue is proper in this Court under 28 U.S.C. § 1391 because the Defendants  Carlton County, which is a Minnesota county and at least one County official both of whom are within this district, and because the events giving rise to the claims presented occurred within this district.

## PARTIES

**The Plaintiffs.**

9.    Plaintiff Steelmantown Church is a non-denominational, 501(c)(3) nonprofit religious corporation incorporated in New Jersey. Although founded in the New Testament

and original Scriptures from the time of Christ, the Steelmantown Church is open to all wishing to share spiritual faith and journey as equals in the eyes of God. Steelmantown Church is also chartered under Universal Ministries. Steelmantown Church was created exclusively for religious purposes.

10.    Steelmantown Church is registered with the Minnesota Secretary of State as a non-profit foreign corporation.

11.    Steelmantown Church is a religious corporation, registered as a foreign non-profit corporation and identifies itself as a religious corporation under Minn. Stat. ch. 307 and hence, may establish a private cemetery on property owned by the Steelmantown Church.

12.    Steelmantown Church believes that there is no Minnesota law or other legal authority that requires it to file a separate filing with the Minnesota Secretary of State as a religious corporation.

13.    Steelmantown Church believes that there is no Minnesota law or other legal authority that requires it to file with the Carlton County Recorder's Office a separate filing as a religious corporation.

14.    Plaintiff Edward Bixby is the president of Steelmantown Church. As president, Bixby is the leader of the Steelmantown Church. As the Church's leader, Bixby is an ordained minister with Universal Ministries. Universal Ministries includes members from all Faiths and walks in life founded in New Testament and original Scriptures from the time of Christ and open to all wishing to share spiritual faith and journey. A universalist for

example, believes that all people will ultimately be saved and reconciled with God, regardless of their actions or beliefs, emphasizing God's universal love and mercy.

15.    Plaintiff Bixby's religious beliefs, as an ordained Universal Minister, are founded in the New Testament and original Scriptures, as he interprets them, who uses them to share his spiritual faith and journey with God and with others. Bixby believes that as a Universal Minister, all people will be saved and ultimately be reconciled with God with his mercy, regardless of their own faith or actions. Bixby believes, as he interprets the New Testament and Scriptures that ultimately, all people will come face-to-face with God.

16.    Plaintiff Bixby believes, as a leader of the Steelmantown Church, that God has asked him to serve all people of all religious beliefs and to heal them with the love of God. Bixby believes that it is God's desire for him to serve Him by providing compassion, understanding, and sincere love regardless of their faith

17.    In serving God, Bixby believes God has led him to serve all people of all faiths through Steelmantown Church with a resting place for the deceased remains (cemeteries), while providing the living who are suffering from their loss a place for peace, beauty, and reflection. That reflection is of itself part of Bixby's religious beliefs that through natural burials, the living will see the spirit of their beloved within every other living thing— the bee, the bird, the flower, the tree, and have a place of reflection and prayer until they meet again before God.

18.    It is Bixby's belief that the private cemetery the Steelmantown Church seeks to establish in Carlton County, reflects the embodiment of his faith and the Church and

Universal Ministries as accepting all religions and all faiths because all people are one with God.

19.    Plaintiff Loving Earth Memorial Gardens, LLC is a limited liability corporation incorporated in Minnesota.

20.    Plaintiff Matthew Connell is the president and manager of Loving Earth. He is also an ordained minister with Universal Ministries.

21.    Universal Ministries is made up of members from all Faiths and walks in life founded in New Testament and original Scriptures from the time of Christ and open to all wishing to share spiritual faith and journey. A universalist for example, Connell believes that all people will ultimately be saved and reconciled with God, regardless of their actions or beliefs, emphasizing God's universal love and mercy.

22.    Like Bixby, as an ordained Universal Minister. Plaintiff Connell's religious beliefs are founded in the New Testament and original Scriptures, as he interprets them, who uses them to share his spiritual faith and journey with God and with others. Connell believes that as a member of the Steelmantown Church as a Universal Minister, all people are one with God and will be saved and ultimately be reconciled with God, regardless of their own faith or actions. Connell believes, as he interprets the New Testament and Scriptures, that ultimately, all people will come face-to-face with God.

23.    Plaintiff Connell believes, as he serves the Steelmantown Church through Loving Earth, that God has asked him to serve all people of all religious beliefs and to heal them with the love of God. Connell believes that it is God's desire for him to serve Him by providing compassion, understanding, and sincere love regardless of their faith

24.     In serving God, Connell believes God has led him to serve all people of all faiths through Loving Earth and Steelmantown Church with a resting place for the deceased remains (cemeteries), while providing the living who are suffering from their loss a place for peace, beauty, and reflection. That reflection is of itself part of Connell's religious beliefs that through natural burials, the living will see the spirit of their beloved within every other living thing—the bee, the bird, the flower, the tree, (as creatures and creations of God) and have a place of reflection and prayer until they meet again before God.

25.     It is Connell's belief that the private cemetery he seeks to manage and operate for Steelmantown Church reflects the embodiment of his faith as Universal Minister as accepting all religions and all faiths, because all people are one with God.

26.     Loving Earth is to be the entity responsible for the management and operation of the Steelmantown Church's private cemetery in the Township of Blackhoof, Carlton County, once the survey and plat documents are recorded by the Carlton County Property Recorder's Office.

27.     Loving Earth, through Matthew Connell, is responsible for representing the interests of Steelmantown Church regarding the private cemetery to be established in Carlton County, consistent with the beliefs of the Church regarding the burial of those who believe in a God.

28.     Steelmantown Church, Edward Bixby, Matthew Connell, and Loving Earth seek declaratory and injunctive relief. Carlton County refused to record Steelmantown Church's legal instruments on the Church's real property to operate a private cemetery within a district zoned for private cemeteries. The County has no authority to identify the

Steelmantown Church as a religious corporation other than under Minn. Stat. ch. 307 as the Church identified itself for the filing of recording documents. The Steelmantown Church has identified itself as a registered foreign non-profit religious corporation with the Minnesota Secretary of State seeking to establish a private cemetery on property the Church owns in Carlton County.

**The Defendants.**

29.     Defendant Carlton County is political subdivision in Minnesota.

30.     Defendant Sarah Plante Buhs is an elected official and a member of the Carlton County Board of Commissioners for the County's District 1. As a member of the Board, Buhs, is responsible for all policies adopted by the Board and County officials responsible for decisions to accept or reject recording documents with the County or other policy decisions that directly affect entities seeking to use their property within state or federal law or both. As adopting or otherwise supporting County official decisions as a matter of policy, Buhs is also responsible for causing constitutional injuries to any one of the Plaintiffs. Buhs's policy decisions reflect the deliberate indifference to the risk of the constitutional injuries asserted in this complaint.

31.     Defendant Marv Bodie, is an elected official and a member of the Carlton County Board of Commissioners for the County's District 2. As a member of the Board and presently the acting Board's Chair, Bodie is responsible for all policies adopted by the Board and County officials responsible for decisions to accept or reject recording documents with the County or other policy decisions that directly affect entities seeking to use their property within state or federal law or both. As adopting or otherwise supporting County official

decisions as a matter of policy, Bodie is also responsible for causing constitutional injuries to any one of the Plaintiffs. Bodie's policy decisions reflect the deliberate indifference to the risk of the constitutional injuries asserted in this complaint.

32.     Defendant Thomas R. Proulx, is an elected official and a member of the Carlton County Board of Commissioners for the County's District 3. As a member of the Board and presently the acting Board's Vice-Chair, Proulx is responsible for all policies adopted by the Board and County officials responsible for decisions to accept or reject recording documents with the County or other policy decisions that directly affect entities seeking to use their property within state or federal law or both. As adopting or otherwise supporting County official decisions as a matter of policy, Proulx is also responsible for causing constitutional injuries to any one of the Plaintiffs. Proulx's policy decisions reflect the deliberate indifference to the risk of the constitutional injuries asserted in this complaint.

33.     Defendant Susan Zmyslony, is an elected official and a member of the Carlton County Board of Commissioners for the County's District 4. As a member of the Board, Zmyslony is responsible for all policies adopted by the Board and County officials responsible for decisions to accept or reject recording documents with the County or other policy decisions that directly affect entities seeking to use their property within state or federal law or both. As adopting or otherwise supporting County official decisions as a matter of policy, Zmyslony is also responsible for causing constitutional injuries to any one of the Plaintiffs. Zmyslony's policy decisions reflect the deliberate indifference to the risk of the constitutional injuries asserted in this complaint.

34.      Defendant Dan Reed, is an elected official and a member of the Carlton County Board of Commissioners for the County's District 5. As a member of the Board, Reed is responsible for all policies adopted by the Board and County officials responsible for decisions to accept or reject recording documents with the County or other policy decisions that directly affect entities seeking to use their property within state or federal law or both. As adopting or otherwise supporting County official decisions as a matter of policy, Reed is also responsible for causing constitutional injuries to any one of the Plaintiffs. Reed's policy decisions reflect the deliberate indifference to the risk of the constitutional injuries asserted in this complaint.

35.      Defendant Kristine Basilici is the Carlton County Recorder, of the Carlton County Recorder's Office.

36.      The Carlton County Recorder's Office is responsible for statutory duties assigned to the Offices of the County Recorder, Registrar of Titles, and the Local Registrar (Vital Records).

37.      The Carlton County Recorder's Office is also the custodian of all legal documents that affect real estate and this office provides protection and public notice of such information.

38.      The Recorder's Office is further charged with the acceptance and recording of over 400 different document types (according to Minnesota State Statutes), while providing access to those documents as well as the permanent preservation of all such records and is the authorized repository for Military Discharge Records.

39.     The Defendant Chris Berg is Carlton County's Zoning and Environmental Services Administrator. The former Carlton County Zoning and Environmental Services Administrator was Heather Cunningham.

40.     Carlton County's Zoning and Environmental Services Department is to protect and enhance Carlton County's quality of life, environment, and growth by providing the citizens of Carlton County with comprehensive planning, efficient ordinance enforcement, provide technical assistance and public forums as necessary.

41.     Relevant to this complaint, Carlton County Zoning and Environmental Services is the zoning authority for all areas of Carlton County except the following cities and townships:  City of Barnum, City of Carlton, City of Cloquet, City of Cromwell, City of Kettle River, City of Moose Lake, City of Scanlon, Thomson Township, City of Wrenshall and City of Wright. Carlton County also has zoning authority in shoreland areas (property within 1,000 feet of a lake or 300 feet of a river or stream) in the City of Cromwell, City of Carlton and Thomson Township.

42.     The Carlton County Recorder's Office or the Carlton County Zoning and Environmental Services Department, or both, acted individually or together to reject the proper survey and plat submitted for recording under Minn. Stat. ch. 307 to establish a private cemetery on property owned by the non-profit foreign religious corporation identified as Steelmantown Church. The Recorder's Office, or the Zoning and Environmental Services Department, individually or together, had no authority to reject the Steelmantown Church's survey and plat as a private cemetery under Minn. Stat. ch. 307.

## STATEMENT OF FACTS AS ALLEGATIONS

**I.** **Steelmantown Church's purchase of property zoned for the establishment of a cemetery in Carlton County will be a private cemetery for natural-green burials.**

### Steelmantown Church as a religious corporation.

43.     Based upon their respective religious beliefs and personal experiences, Edward Bixby and Matthew Connell understand and believe death strikes a family to the heart. They have each respectfully found that any subsequent funeral service allows for those mourning of the loss of a loved one to seek closure and deal with grief. Some do so with burials; others with cremation. And, Bixby's and Connell's individual and religious experiences have found that either way of dealing with the deceased body of a loved one, it gives people a time for a proper goodbye. With the final resting place, a cemetery provides the emotional and spiritual comforts of the natural surroundings that can be keenly felt.

44.     Plaintiff Steelmantown Church is a 501(c)(3) religious non-profit corporation, and incorporated under Chapter 15A of the New Jersey statutes governing non-profit corporations.  The Church is a religious corporation. The Steelmantown Church, founded in the New Testament and original Scriptures from the time of Christ, the Steelmantown Church is open to all wishing to share spiritual faith and journey as equals in the eyes of God. Steelmantown Church is chartered under Universal Ministries.

45.     The Universal Ministries includes members from all Faiths and walks in life founded in New Testament and original Scriptures from the time of Christ and open to all wishing to share spiritual faith and journey. A universalist for example, believes that all

people will ultimately be saved and reconciled with God, regardless of their actions or beliefs, emphasizing God's universal love and mercy.

46.    In short, Steelmantown Church is a religious non-profit corporation because its' identity and mission as an incorporated religious corporation are derived from religious or spiritual traditions. A cemetery, open to all faiths is a reflection of the Church's identity and mission within the Universal Ministries as practiced by Plaintiffs Steelmantown Church, Bixby and Connell as part of their respective religious beliefs.

47.    Steelmantown Church, as a foreign non-profit religious corporation, seeks to establish a private cemetery in Carlton County, Minnesota, on land the Church owns.

48.    Steelmantown Church neither desires, intends, nor otherwise seeks to establish a public cemetery in Carlton County, Minnesota.

## II.    Steelmantown Church, as a foreign non-profit religious corporation, is not a "religious society" under Minn. Stat. ch. 315.

49.    Steelmantown Church's required filings with the Secretary of State as a foreign non-profit corporation are up to-date. The Minnesota Secretary of State has no requirement for a religious foreign non-profit corporation to specifically identify itself as a religious corporation.

50.    Steelmantown Church's governmental filings, such as with the IRS, is reflective of the Church identifying itself as a religious corporation. Regardless, it is not the government who may ultimately determine whether Steelmantown Church is a religious corporation embodying the beliefs as described under Plaintiff Bixby's interpretation of the foundation of Church and Universal Ministries under the New Testament and original Scriptures.

51.    Steelmantown Church believes that Minn. Stat. ch. 303 governs foreign corporations.

52.    As a foreign corporation, the Steelmantown Church recognizes that it is obligated to follow statutory provisions found under Minn. Stat. ch. 303. Steelmantown Church, as a foreign corporation, was formed under New Jersey Chapter 15A's statutory provisions governing non-profit corporations.

53.    Thus, Steelmantown Church was not organized under Minn. Stat. ch. 315 governing "religious societies" organized in Minnesota.

54.    Minnesota Statutes Chapter 315 has no application to nonprofit corporations governed by Minn. Stat. ch. 317A – which include many churches. However, as a foreign non-profit religious corporation, Steelmantown Church is subject to the provisions under Minn. Stat. ch. 303.

55.    Minnesota Statutes Chapter 315 applies only to religious societies organized in Minnesota. Nothing in Chapter 315 reveals, as Steelmantown Church believes, as applicable to foreign non-profit religious corporations.

56.    Steelmantown Church believes that as a foreign non-profit religious corporation, it is neither required nor otherwise mandated to organize as a "religious society" under Minn. Stat. ch. 315.

57.    As a religious corporation, organized in the state of New Jersey as a non-profit corporation, the Steelmantown Church it is not a "religious society" organized in the state of Minnesota.

58.    Steelmantown Church is not a "religious society."

14

59.     Because Steelmantown Church is not a "religious society" and it is neither required nor mandated to organize under Minn. Stat. ch. 315.

60.     Steelmantown Church believes that neither Carlton County, the member defendants Board of Commissionere, the County Recorder, nor any other County official has any legal authority to determine what constitutes a religious corporation.

### III.    Steelmantown Church is a religious corporation seeking to establish a private cemetery, not a public cemetery.

61.     Minnesota Statutes § 307.01 is accurately quoted, in part, as follows: "Any private person and any religious corporation may establish a cemetery on the person's or corporation's own land in the following manner: The land shall be surveyed and a plat thereof made…."

62.     Steelmantown Church identifies itself as a religious corporation. Its founder, Plaintiff Bixby, embodies his religious beliefs as a Universal Ministries Minister and what the Church can bring to others regardless of their identified faith. *See also,* all other relevant paragraphs describing Bixby's religious beliefs, including those of Connell's.

63.     Steelmantown Church believes and identifies itself as a religious corporation falling within the phrase "any religious corporation" as found under Minnesota Statutes § 307.01.

64.     Steelmantown Church believes that the phrase "any religious corporation" found under Minn. Stat. § 307.01, does not exclude foreign non-profit religious corporations.

65.     Steelmantown Church believes that the phrase "any religious corporation" found under Minn. Stat. § 307.01 includes foreign non-profit religious corporations.

66.     As a religious corporation, Steelmantown Church believes it is entitled to establish a private cemetery on land it owns in Minnesota under Minn. Stat. ch. 307.

67.     Minnesota Statutes § 306.87, subd. 3, regarding public cemeteries states in part, as accurately quoted states that: "All cemeteries started or established as public cemeteries and all cemeteries hereafter started or established, *except cemeteries established by religious corporations*, are public cemeteries within the provisions of this chapter." Minn. Stat. § 306.87 (emphasis added).

68.     As a foreign non-profit religious corporation, Steelmantown Church believes it falls within the phrase "religious corporations" found under Minn. Stat. § 306.87, subd. 3. As such, because Steelmantown Church seeks to establish a private cemetery as a "religious corporation," it falls within the exception clause of § 306.87, subd. 3, which is accurately quoted, in part, as follows: "except cemeteries established by religious corporations…."

69.     Steelmantown Church, as a religious corporation, seeks to establish a private cemetery in the Township of Blackhoof, Carlton County, Minnesota with the assistance of Plaintiffs Matthew Connell and Loving Earth Memorial Gardens, LLC.

70.     Steelmantown Church is the sole owner of real property in the Township of Blackhoof, Carlton County, Minnesota.

71.     The Steelmantown Church real property is identified as follows: The South ½ of the NE ¼, Section 20, Township 47, Range 17, Carlton County, Minnesota. It is abstract property. The property is approximately 20 acres in size.

72.     The address of the real property is 3133 Pioneer Road, Blackhoof Township, Minnesota, in Carlton County. It is referred to in the allegations of this Complaint as "the real property" or "property."

**IV.    Steelmantown Chruch's private cemetery will provide for green burials.**

73.     The Carlton County Steelmantown Church cemetery, as a planned private cemetery, is consistent with the religious beliefs and an extension of the religious beliefs of Plaintiff Bixby, and the Steelmantown Church, as a Universal Ministry.

74.     The Carlton County Steelmantown Church cemetery will provide for natural, green burials. In a green burial, bodies are buried directly in the earth with organic materials and without embalming using synthetic chemicals. It is an alternative to conventional burial methods and funerary customs that require concrete or plastic vaults or liners, allow embalmed bodies, and allow exotic wood or metal caskets.

75.     The purpose of a green burial is to allow the body to quickly and naturally return to the elements of the earth and begin the regeneration of new life. The body may be buried in a biodegradable coffin, casket, or shroud. The burial grave would not use a burial vault or outer burial container that would prevent the body's contact with soil.

76.     Cremation is another alternative in which the remains are treated differently to ensure they are safe and beneficial for plant life as planned within the cemetery property. This means processes to lower the pH and sodium levels that are safe for interring amongst vegetation. This too will be utilized at the Loving Earth Carlton County private cemetery of Steelmantown Church.

77.    Indeed, loved ones of the deceased are also invited to choose a tree to be planted in one of the Steelmantown Church's private cemetery as planned forests, native wildflower habitat, or perennial flower gardens, or woodlands along with the cremated remains. The microbiology used transforms the ash into molecules which are then absorbed by the tree and eventually distributed by seeds back into the earth; a full circle of life. This too will be utilized at the private cemetery.

78.    Steelmantown Church and Loving Earth, consistent with their religious practices, understand that their private cemetery will be a place made for reflection, and not just the for the mortality of those who are buried there. The proposed private cemetery will be a rich, provocative place, with powerful and positive meanings arising from its intended natural setting as reflective of and consistent with the Plaintiffs religious beliefs.

79.    Green burials at the Steelmantown Church's private cemetery, as managed by Loving Earth, will request only suggested donations and not set payment amounts for services with the exception of certain services (such as opening and closing actual burial sites.

80.    Green burials private cemetery in Carlton County will have designated areas for the burials as well as for cremated remains. *See* **Exhibit 1** (drawing of cemetery showing plantings, green areas).

81.    **Exhibit 1** reflects the designated areas for green burials, as communicated to Steelmantown Church's surveyor who is currently preparing yet another formal survey and plat for the Church's private cemetery for another attempt to file with the Carlton County Recorder and have the documents recorded, as mandated under Minn. Stat. § 307.01.

82.     Notably, green burial cemeteries are not unfamiliar in Minnesota. For example, Gate of Heaven Preserve at Resurrection Cemetery of The Catholic Cemeteries Natural Burial Ground, in Mendota Heights and Mound Cemetery of Brooklyn Center Hybrid Cemetery in North Brooklyn Center are considered as green burial cemeteries. Likewise, Jewish or Muslim cemeteries are considered as "green" cemeteries.

83.     The Steelmantown Church private cemetery has considered possible identified environmental effects of the cemetery to provide for green burials. In this regard, Loving Earth, through Matthew Connell, has designed the private cemetery to avoid any potential adverse environmental effects. *See e.g.,* **Exhibit 1** (drawing of cemetery showing plantings, green areas).

84.     Indeed, the residents of Blackhoof Township sought an environmental review from the Minnesota Department of Natural Resources. The DNR rejected the request for an environmental review, finding it not necessary.  **Exhibit 2** (Minnesota DNR Record of Decision).

85.     The Loving Earth, Steelmantown Church will comply with all reasonable state and local laws and regulations involving health, safety, or welfare.

86.     For example, Minnesota recently examined and reported recommendations regarding green burials. "Green Burial and Natural Organic Reduction Study," Jan. 31, 2025. **Exhibit 3** (Minn. Dept. of Health Study).

87.     The Study acknowledged, as accurately quoted, in part, that "[t]he growing demand for environmentally sustainable end-of-life practices has led to the rise of green burials and natural organic reduction (NOR)." *Id.,* at 1.

88. The Study examined the "environmental and health impacts that may be caused from these disposition methods. Recommendations focus on ensuring environmental protection and public health safety to these eco-friendly burial methods." *Id.,* at 1.

89. After the Study, the Minnesota Legislature adopted certain elements of the Study found in State Senate File 2819. The Loving Earth private cemetery plat map is consistent with and complies with the requirements of the recently enacted law.

90. Meanwhile, the Loving Earth, Steelmantown Church private cemetery, will not contaminate any groundwater.

91. The Loving Earth, Steelmantown Church private cemetery, will not contaminate any wells.

92. The Loving Earth, Steelmantown Church private cemetery, will not contaminate any rivers.

93. The Loving Earth, Steelmantown Church private cemetery, will not contaminate any part of the Blackhoof's water supply.

94. Operating the Loving Earth, Steelmantown Church private cemetery, will not harm the public as a productive use of property.

95. Providing the public with a private cemetery where people can bury their loved ones in a natural, environmentally sustainable way is a productive use of property.

**V.    Carlton County's Zoning Ordinances allows for the establishment of private cemeteries in the Township of Blackhoof.**

96. Carlton County established Zoning Ordinance No. 27, adopted on or about March 1, 2005, to govern real property within the boundaries of the County.

97.     The County's Zoning Ordinances are applicable to the Township of Blackhoof.

98.     The address of Steelmantown Church's property for use as its private cemetery is located at 3133 Pioneer Road, Blackhoof, Minnesota. Therefore, Steelmantown Church believes that Carlton County's Zoning Ordinances are applicable to the Church's real property found in Blackhoof, Minnesota.

99.     Carlton County zoned the purchased Steelmantown Church property in the Township of Blackhoof as A-2 Agriculture/Rural Residential District. The A-2 Agriculture/Rural Residential District allows for the establishment of private cemeteries.

100.    Under Section 4, Establishment of Districts, Subd. B, A-2 Agriculture/Rural Residential District, subd. 1 states the purpose of the district and is accurately quoted as follows: "The A-2 Agriculture/Rural Residential District is intended to provide a district that will allow suitable areas of the County to be used for agricultural, forest management, large-lot residential homesites, and other uses appropriate in a rural environment in accordance with the *Carlton County Community-Based Comprehensive Plan.*" (Original emphasis). **Exhibit 4** (Carlton County Zoning Ordinance #27).

101.    Under Section 5 governing Zoning Use Provisions, subd. B. 2.a., A-2 Agriculture/Rural Residential District permitted use states, as accurately quoted, the following: "Any use that is a permitted use, in the A-1 District, except clustering." *Id.*

102.    Under Section 5 governing Zoning Use Provisions, subd. A, A-1 Agriculture/Forest Management District, subdivision 2, identifying Permitted Uses,

subdivision 2.b., is accurately quoted as follows: "Cemeteries platted as private cemeteries pursuant to Minnesota Statutes Chapter 307." *Id.*

103.    As the Steelmantown Church, Ed Bixby, Matt Connell, and Loving Earth believe, they have found nothing under Minnesota law in chapter 307 and within the phrase "any religious corporation" that mandates a religious corporation such as the foreign non-profit religious corporation to be incorporated under Minnesota law.

104.    Because Carlton County's Zoning Ordinance, A-2 Agriculture/Rural Residential District subdivision B.2.a governing permitted uses includes A-1 Agriculture/Forest Management District subdivision A.2.b, the Steelmantown Church believes the County's zoning ordinance allows for a private cemetery on the real property the Church owns in Blackhoof, Minnesota.

105.    Carlton County Zoning Ordinances identify A-2 does not require a permit for the use as a private cemetery.

106.    As a foreign non-profit religious corporation, Steelmantown Church through its representative Matt Connell, presented a surveyed and plat map for a private cemetery to be recorded by the Carlton County Recorder on or about April 24, 2023.

107.    Steelmantown Church believed that as a foreign non-profit religious corporation, its request to record its surveyed and plat map complied with Minn. Stat. § 307.01 that is accurately quoted, in part, as follows:  "Any private person and any religious corporation may establish a cemetery on the person's or corporation's own land in the following manner: The land shall be surveyed and a plat thereof made...."

108.    As a foreign non-profit religious corporation, Steelmantown Church believes it is entitled to have its surveyed and plat map for a private cemetery recorded with the Carlton County Recorder's Office.

109.    Immediately after Connell presented the surveyed and plat map for the Steelmantown Church private cemetery to the Carlton County Recorder, Connell believes the survey and plat map were summarily rejected for filing by the Recorder.

110.    The Carlton County Recorder did not record the Steelmantown Church's private cemetery survey and plat map.

111.    Then Carlton County Zoning Administrator, Heather Cunningham, represented to the public, the County Board, and to Steelmantown Church through Connell of Loving Earth, that also, in her role as the final decision-maker for the County, supported the County Recorder's denial of recording the survey and plat map for the private cemetery in Blackhoof, Minnesota.

112.    Neither the Carlton County Recorder nor the Carlton County Zoning Administrator have the authority to reject the survey and plat map for a private cemetery of a nonprofit religious corporation under Minn. Stat. ch. § 307.

113.    Nevertheless, the County Board did not dispute and thus, supported the decisions of the County Recorder or the Zoning Administrator or both.

114.    The then Carlton County Zoning Administrator, Heather Cunningham, knew that her refusal to record Steelmantown Church's survey and plat map into the County's records violated the law.

115.    Cunningham claimed that Steelmantown Church was a "religious society" under Minn. Stat. ch. 315. Her claim represents knowledge of how Chapter 315 applies to religious organizations or corporations. It also represents knowledge of the Church's rights under the Minnesota Constitution or the U.S. Constitution regarding property usage, the protection of religious liberties, including the Establishment Clause, the Free Exercise Clause, and the Church Autonomy Doctrine.

116.    Because of Cunningham's claim of knowledge to refuse the recording of Steelmantown Church's plat for a private cemetery under Chapter 315, she knew her rational and use of Chapter 315 against Steelmantown Church was false.

117.    Because Cunningham knew her rational to claim Steelmantown Church had to be organized as a religious society under Minn. Stat. Ch. 315, she acted either maliciously, improperly, arbitrarily, or in a religious discriminatory manner or all.

118.    Because Cunningham knew her rational to claim Steelmantown Church had to be organized as a religious society under Minn. Stat. ch. 315, the false communication reflects, as Connell and Steelmantown Church believes, as furthering the County's attempt to interfere with the religious activities of the Church.

119.    In addition, Cunningham communicated to Connell that a conditional use permit was required to spread cremains upon the private cemetery property. Cunningham knew the need for a CUP was false. Connell and Steelmantown Church believe that the false communication reflects the furthering of the County's attempt to interfere with the religious activities of the Church.

120.    Because Cunningham knew her rational to claim Steelmantown Church required a CUP to spread cremains upon the private cemetery property was false, she acted either maliciously, improperly, arbitrarily, or in a religious discriminatory manner or all, as Connell and Steelmantown Church believe, to further the County's attempt to interfere with the religious activities of the Church. Furthermore, the County Board of Commissioners did nothing to dispute Cunningham's position and as such adopted her position as an affirmative policy for the County.

121.    The defendant Kristine Basilici is the current Carlton County Recorder for the County's Recorder's Office. She remains responsible as a County official, to follow and has adopted previous decisions of her predecessor. This is evident because Basilici has made no effort to reverse Cunningham's previous decision not to record the survey and map Steelmantown Church through Loving Earth, as presented to the Recorder's Office. Likewise, the County Board of Commissioners did nothing to dispute Basilici's position and as such adopted her position as an affirmative policy for the County.

122.    The defendant Chris Berg, of Carlton County Zoning and Environmental Services Administration, serving as the department's administrator, affirmed the action of Cunningham to reject the Steelmantown Church's (through Loving Earth) recording of its survey and map for a private cemetery under Minn. Stat. § 301.01. He too participated in the decision to reject the recording of the Steelmantown Church's survey and plat map. Berg has made no effort to reverse the previous decision not to record the survey and map Steelmantown Church, through Loving Earth as presented to the Recorder's Office, the

County Board of Commissioners did nothing to dispute Berg's position and as such adopted her position as an affirmative policy for the County.

123.    Minnesota Statutes § 306.87, subd. 3, regarding public cemeteries states in part, as accurately quoted: "All cemeteries started or established as public cemeteries and all cemeteries hereafter started or established, *except cemeteries established by religious corporations*, are public cemeteries within the provisions of this chapter." Minn. Stat. § 306.87 (emphasis added).

124.    Steelmantown Church is a religious corporation, albeit a foreign non-profit religious corporation.

125.    Minnesota Statutes § 306.87, subd. 3, does not state a "cemeter[y] established by religious corporations" excludes foreign non-profit religious corporations.

126.    Steelmantown Church believes that the phrase "religious corporations" includes foreign non-profit religious corporations.

127.    Steelmantown Church attempted to record in Carlton County, as a use of its property, a private cemetery.

128.    Carlton County defendant officials, either individually or collectively as named defendants refused to record the Steelmantown Church's surveyed and platted map to use its property for a private cemetery.

129.    Minnesota Statutes Chapter 307 is titled "Private Cemeteries."

130.    Minnesota Statutes § 307.01 is accurately quoted in part, as follows: "Any private person and any religious corporation may establish a cemetery on the person's or

corporation's own land in the following manner: The land shall be surveyed and a plat thereof made."

131.    Steelmantown Church is a religious corporation.

132.    And as previously stated, Steelmantown Church is incorporated in New Jersey and is registered as a foreign corporation in Minnesota.

133.    A phrase in Minnesota Statutes § 307.01 is accurately quoted as stating, "any religious corporation."

134.    Steelmantown Church, as a religious corporation, owns the land in Carlton County where the Church sought to establish the property as a private cemetery.

135.    Steelmantown Church determined that the property purchased in Carlton County would be a private cemetery consistent with its religious beliefs and practices.

136.    A phrase in Minn. Stat. § 307.01 is accurately quoted as stating: "any religious corporation may establish a cemetery on the person's or corporation's own land in the following manner: The land shall be surveyed and a plat thereof made."

137.    The Loving Earth cemetery is on Steelmantown Church's own land.

138.    Steelmantown Church acquired the land in 2023.

139.    Steelmantown Church, through Loving Earth, obtained a survey and plat for the private cemetery. **Exhibit 5** (Original Loving Earth Plat Map).

140.    Steelmantown Church sought to file with the Carlton County Recorder's Office a survey and plat as a private cemetery.

141.    The Defendant Kristine Basilici, Carlton County Recorder of the Carlton County Recorder's Office, refused to record the survey and plat of the private cemetery.

142.    Basilici did not record the Steelmantown Church's survey and plat of the private cemetery.

**VI.    County officials demand Steelmantown Church to reorganize its internal structure in a manner consistent with Minn. Stat. ch. 306, that the Church deems inapplicable to it.**

**The County successfully seeks a moratorium from State legislature regarding green cemeteries.**

143.    County officials assert that Steelmantown Church must follow the provisions of Minn. Stat. ch. 306. However, it is the Church's belief, and that of all Plaintiffs, that to meet the provisions of Chapter 306, would require the reorganization in part or in whole of the Church. The Church believes the County's demands interferes with the internal decision-making and internal organization of the Church.

144.    Certain residents of Carlton County or Blackhoof, Minnesota, opposed Steelmantown Church and Loving Earth's plan to establish a green burial cemetery on property the Church owned.

145.    The community members who publicly opposed the cemetery were a small but influential group of individuals. Based upon how the Steelmantown Church and Loving Earth would operate the cemetery based upon the Church's religious beliefs, the community members expressed their distain that members of the Muslim faith could use the cemetery. Moreover, the community members also expressed a distain that the Church's establishment of the planned cemetery would bring unwanted people from north Minneapolis. **Exhibit 6** (Pine Knots News Article).

146.    As an extension to the community opposition, at least one elected Carlton County Board member, then Board member Mark Thell—without opposition of other

28

Board members—sought and lead an effort to have the Minnesota State Legislature impose a two-year moratorium on green cemeteries throughout the state with few exceptions. There is no evidence the County Board opposed the effort for a moratorium, specifically as it related to the small but influential group of citizens regarding their opposition of the Steelmantown Church's use of its private property as a private cemetery consistent with its religious beliefs (and those of the remaining Plaintiffs). *Id.*

147.    Steelmantown Church and Loving Earth believe that the Carlton County Board member's intent, and thus, that of the Board itself, was to obtain a moratorium to harm the Church and its religious practices as it relates to the operation of a green burial cemetery open to all religious denominations.

148.    In a similar vein, Carlton County offered a variance to Matt Connell for Steelmantown Church through the Zoning Administrator only if the Church operated under the statutory provisions of Minn. Stat. ch. 306. The County knew that the variance was not applicable to the Church. It is further evidence of the County and all Defendants' efforts to interfere with the internal affairs of the Church.

149.    In further actions of the Carlton County Board to impede upon the religious practices of Steelmantown Church and Loving Earth, the Board, because it and other County officials insisted and demanded the Church to organizationally comply with and act under Minn. Stat. ch. 306, the Board also amended its zoning code. The amendments specifically sought target the Church and impede the Church's religious practices and those of all Plaintiffs.  *See generally,* Carlton County Zoning Ord. # 27, **Exhibit 4**.

150.    The actions of the Carlton County Board, the Plaintiffs believe, was an overt intent to meaningfully curtail the Church's ability to operate its planned private cemetery in a manner consistent with the Church's religious beliefs and practices.

151.    The Steelmantown Church's central tenant of its religious beliefs is to be open to all individuals who believe in a God, regardless of their respective religious denomination, and as a religious practice provide in Carlton County a private cemetery open to all denominations.

152.    Indeed, Carlton County officials acted in a manner that also revealed they completely disregarded the First Amendment religious protections afforded to the Steelmantown Church and Loving Earth (inclusive of all Plaintiffs).

153.    Moreover, at least one elected member of the Carlton County Board sought a moratorium from the Minnesota State Legislature, through and with the assistance of the County's legislative elected officials to obtain a two-year moratorium to prevent Steelmantown Church and Loving Earth to establish its planned green burial cemetery. It was disguised as an effort to protect other communities from green cemeteries regarding environmental concerns, which had previously been rejected by the Minnesota Department of Natural Resources denial of an environmental review request.

154.    However, the motive of the Carlton County Board member, and without objection of the Board members to his actions, was to specifically target the Steelmantown Church and its religious beliefs and practices as extended to and through the planned establishment of a private green cemetery on property the Church owned under Minn. Stat. ch. 307.

155.    Ironically, the state imposed moratorium, Senate File No. 2674, by its terms did not apply to the Steelmantown Church nor Loving Earth. The moratorium is effective from July 1, 2023 to July 1, 2025.

156.    Under Subdivision 2 of the moratorium, it specifically states, as accurately quoted: "[A] green burial shall not be performed in this state unless the green burial is performed in a cemetery that permits green burials and at which green burials are permitted by any applicable ordinances or regulations." None of the provisions apply to Carlton County. Therefore, Steelmantown Church and Loving Earth are presently allowed to establish the private cemetery as allowed by law. However, the Defendants refuse to allow for the Plaintiffs use of the Church's land as private cemetery consistent with their religious beliefs and practices.

## CAUSES OF ACTION

### I.
### Violation of Constitutionally Protected Right to Property Use

**Steelmantown Church has a constitutional right to use its property as a private cemetery and the Defendants must record the Church's survey and plat map under Minn. Ch. 307.**

157.    Plaintiffs assert and incorporate all previous allegations as if restated to support this claim.

158.    Article I, § 13 of the Minnesota Constitution is accurately quoted as follows: "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."

31

159.    The Fifth Amendment of the U.S. Constitution is accurately quoted as follows, in part: "[N]or be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

160.    The Minnesota Supreme Court has opined that the right of a landowner to use real property freely is protected under both the U.S. Constitution and the Minnesota Constitution.

161.    The Minnesota Supreme Court, as accurately quoted, wrote that "[t]he principle of protecting the right of a landowner to use property freely arises out of the more fundamental principle of valuing the right to property—a right protected under the constitutions of both the United States and the State of Minnesota." *Windcliff Assn., Inc. v. Breyfogle*, 988 N.W.2d 911, 923 (Minn. 2023).

162.    The Minnesota Supreme Court wrote, having quoted from the written decision of the U.S. Supreme Court in *Cedar Point Nursery v. Hassid*, 594 U.S.139, 147 (2021), that "'[t]he Founders recognized that the protection of private property is indispensable to the promotion of individual freedom. As John Adams tersely put it, '[p]roperty must be secured, or liberty cannot exist.' (quoting *Discourses on Davila*, in 6 Works of John Adams 280 (C. Adams ed. 1851))." Id. The quotation is accurate.

163.    The Minnesota Supreme Court wrote, having quoted from the written decision of the U.S. Supreme Court in *Murr v. Wisconsin*, 582 U.S. 383, 394 (2017), that "'Property rights are necessary to preserve freedom, for property ownership empowers persons to shape and to plan their own destiny in a world where governments are always eager to do so for them.'" *Id.* The quotation is accurate. The Plaintiffs agree with this quote.

164. The Minnesota Supreme Court in *Godley v. Weisman*, 158 N.W. 333, 334 (Minn. 1916) wrote, having quoted from the written decision of the New York Supreme Court, Appellate Division in *Schoonmaker v. Heckscher*, 157 N.Y.S. 75, 77 (N.Y. App. Div. 1st Dept. 1916), aff'd, 113 N.E. 1066 (N.Y. 1916) and again in part in *Windcliff Assn., Inc.*, 988 N.W.2d at 923, that "'[t]he law will always favor the free and unrestricted use of property, and therefore all doubts and ambiguities must be resolved in favor of the natural right to the free use and enjoyment of property and against restrictions.'" The quotation is accurate. The Plaintiffs agree with the quote.

165. The Plaintiffs agree with the quotations stated regarding the use of private property as expressed and quoted by the Minnesota Supreme Court in *Windcliff Assn., Inc. v. Breyfogle*, 988 N.W.2d 911, 923 (Minn. 2023).

166. There is no dispute Steelmantown Church owns the private property in Blackhoof, Carlton County, Minnesota as previously described in this Complaint.

167. Plaintiff Loving Earth, is to manage and operate the private cemetery in Blackhoof, Minnesota, also known as Memorial Gardens, in a manner consistent with the religious practices of the Steelmantown Church and Connell's religious belifs as previously described.

168. Loving Earth, through Plaintiff Connell, will not turn away any person who seeks to have deceased loved ones placed at Memorial Gardens regardless of their religious beliefs, consistent with the practices of Universal Ministries as previously described.

169. The private property owned by Steelmantown Church in Blackhoof, Minnesota is zoned A-2 under Carlton County governing zoning ordinances.

170.    Under Carlton County's governing zoning ordinances as zoned A-2, the use of the private property owned by Steelmantown Church authorizes and grants to the owner the use of the property as a cemetery.

171.    Under Carlton County's governing zoning ordinances, the use of the private property owned by Steelmantown Church as a private cemetery is not prohibited. As zoned A-2, the property allows for a designated private cemetery.

172.    Steelmantown Church has a right to use its private property as a private cemetery as its use as protected under the Minnesota Constitution, art. 1, §13.

173.    Steelmantown Church has a right to use its private property as a private cemetery as its use as protected under the U.S. Constitution, amend. V.

174.    The Steelmantown Church recognizes itself as a non-profit religious corporation.

175.    The Minnesota Secretary of State's Office recognizes the Steelmantown Church as a foreign non-profit corporation, the Church of which having filed under the provisions of Minn. Ch. 303.

176.    Because Minn. Stat. § 307.01 states, as accurately quoted in part, that "any religious corporation may establish a cemetery on the person's or corporation's own land in the following manner: The land shall be surveyed and a plat thereof made," the Steelmantown Church, as a non-profit religious corporation, has a statutory right to establish a private cemetery in Carlton County, in Blackhoof, Minnesota. The statutory provisions provide the Church a statutory right to establish a private cemetery on property the Church owns.

177.    Because Minn. Stat. § 307.01 states, as accurately quoted in part, that "any religious corporation may establish a cemetery on the person's or corporation's own land in the following manner: The land shall be surveyed and a plat thereof made," the Steelmantown Church, as a non-profit religious corporation, it has a statutory right to have its land surveyed and plat recorded in the Carlton County Recorder's Office.

178.    In addition, the Minnesota Supreme Court has written in *Erickson v. Sunset Meml. Park Ass'n*, 108 N.W.2d 434, 440–41 (Minn. 1961) that "[t]he public nature and character of its business and interests, as reflected by the provisions of c. 306, by virtue of which the state permits it to operate, should be distinguished from the private character of cemeteries operated by religious and fraternal corporations under c. 307 and cemeteries within the purview of the last sentence of s 306.02, which recognizes the right of a public cemetery association affiliated with a religious corporation to acquire properties to be used exclusively for burial of persons of that particular faith." This is an accurate quote.

179.    The Minnesota Supreme Court in *Sunset Meml. Park Ass'n*, 108 N.W.2d at 440–41, went on to write that, "From time immemorial cemeteries and interment in them have had a close identification with religion. This identification is natural to religion in civilized cultures. An essential element of many religious beliefs, strongly held for centuries, has been that their communicants must be buried in consecrated ground in which only communicants of that particular faith may be buried." This is an accurate quote.

180.    The Minnesota Supreme Court in *Sunset Meml. Park Ass'n*, 108 N.W.2d at 441, completed its analysis and wrote the following, which is an accurate quote: "The right of burial in a religious or fraternal cemetery derives from membership. It is for that reason that

church cemeteries are classified as private cemeteries in which the exclusive burial of communicants of a religious faith may be practiced in accordance with its beliefs."

181.   Steelmantown Church and Loving Earth believe that the Minnesota Legislature enacted Minn. Stat. ch.. 307 to govern the establishment of private cemeteries.

182.   As previously described, the private cemetery Steelmantown Church and Loving Earth seek to establish is consistent with their interpretation of Universal Ministries beliefs and their religious practices to accept all religious faiths in the private cemetery.

183.   If the interpretation of the Minnesota Supreme Court revealing the intent of the Minnesota State Legislature is accurate and not volative of the Establishment Clause or the Free Exercise Clause of the U.S. Constitution as described below, and that "[i]t is for that reason that church cemeteries are classified as private cemeteries in which the exclusive burial of communicants of a religious faith may be practiced in accordance with its beliefs," then the Steelmantown Church's religious beliefs as a faith of Universal Ministries and planned establishment of the Church's cemetery in Carlton County to all individuals who believe in a God regardless of religious denomination is consistent with the State Supreme Court's opinion of the State legislature's intent.

184.   The Plaintiffs believe that the Minnesota Supreme Court opinion regarding Minn. Stat. ch. § 307 in *Sunset Meml. Park Ass'n*, 108 N.W.2d at 441 is applicable to Steelmantown Church's use of its property to establish a private cemetery.

185.   The Plaintiffs believe that Minnesota Supreme Court opinion regarding Minn. Stat. ch. § 307 in *Sunset Meml. Park Ass'n*, 108 N.W.2d at 441 establishes that Steelmantown Church has a statutory right to use its property to establish a private cemetery consistent

with the Church's religious beliefs. The Church's planned private cemetery is an extension of and represents the religious practice of the Church.

186. Because the Steelmantown Church and Loving Earth proposed private cemetery, as a "green burial" cemetery as previously described, will not cause harm to the public safety, welfare, or health they have a statutory right under Minn. Stat. § 307.01 to have the Church's surveyed and plat map recorded with the Carlton County Recorder's Office.

187. The Defendants individually or collectively or both, by their actions, have sought to deprive Steelmantown Church its constitutional right to use its property as a private cemetery under either the U.S. Constitution or the Minnesota Constitution or both.

188. The Defendants individually or collectively or both, by their actions, have sought to deprive Steelmantown Church its statutory right under Minn. Stat. § 307.01 to use its property as a private cemetery because Carlton County has refused and denied to record the Church's survey and plat map (through Loving Earth).

189. The Defendants, individually or collectively or both, have refused to record the Steelmantown Church's submitted survey and plat reflecting the use of the Church's property as a private cemetery.

190. The Defendants, individually or collectively, cannot exclude a legitimate land use if their reasons are arbitrary, capricious, or unfounded. The Defendants actions and decisions reveal reasons to deny the recording of the Steelmantown Church's survey map and plat under Minn. Stat. ch. 307 is arbitrary, capricious, or unfounded. The claim that the church must record their documents under Minn. Stat. ch. 306 is an interference with the property right of use, as protected under the Minnesota Constitution and the U.S.

Constitution. The reasoning of the Defendants to reject the Church's documents for recording in the County's Recorder's Office is therefore, arbitrary, capricious, or unfounded.

191.    The Defendants refusal to record the Steelmantown Church's survey and plat map as a private cemetery has irreparably harmed the Church and Loving Earth insofar as they cannot open the cemetery on their property in Blackhoof, Minnesota.

192.    Loving Earth has had to turn away individuals or families who wish to have their deceased loved ones at the Steelmantown Church's private cemetery because of the defendant actions.

193.    Loving Earth is unable to use the Steelmantown Church's private property in the manner intended by Connell consistent with the religious practices of the Church.

194.    Through the Defendants actions, as previously described, either individually or collectively or both, have injured the Steelmantown Church, and Loving Earth, irreparably by the past, present, and future deprivations of their constitutional rights to use their property and to engage in a religious practice that does not harm the public.

195.    The Defendants individually or collectively or both, by their actions, has deprived the Steelmantown Church and Loving Earth their constitutional right to use the Steelmantown Church's property as a private cemetery under either the U.S. Constitution or the Minnesota Constitution or both.

196.    The Plaintiffs seek a declaratory judgment concluding that the Defendants, individually or collectively or both, have deprived Steelmantown Church of its constitutional right to use its private property as a private cemetery under either the U.S. Constitution or the Minnesota Constitution or both.

197.    The Plaintiffs seek a court order to permanently enjoin the Defendants from denying the Steelmantown Church of its constitutional right to use its property as a private cemetery.

198.    The Plaintiffs seek a court order to permanently enjoin the Defendants from denying the Steelmantown Church of its statutory right under Minn. Stat. ch. 307 to use its property as a private cemetery.

199.    The Plaintiffs seek a court order directing the Defendants individually or collectively or both, to record the Steelmantown Church survey and plat as a private cemetery immediately upon the submission of those documents.

200.    The Court should impose any other or all other declaratory or injunctive relief available suitable to cure the alleged violations of the constitutional rights of the plaintiffs under this claim, not otherwise specifically stated or accounted for, including, if appropriate, attorney fees and costs.

## II.

### Violation of the Establishment Clause

**Minnesota Statute ch. 307's provision that a private cemetery is for only those members of one specific and particular religion, favoring one religion over another, and inhibiting the practice of another religion thus, violating the Establishment Clause of the U.S. Constitution.**

201.    Plaintiffs assert and incorporate all previous allegations as if restated to support this claim.

202.    The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The

Establishment Clause applies to the states through the Due Process Clause of the Fourteenth Amendment.

203.     Minnesota Statutes § 306.87, subd. 3, regarding public cemeteries states in part, as accurately quoted: "All cemeteries started or established as public cemeteries and all cemeteries hereafter started or established, *except cemeteries established by religious corporations*, are public cemeteries within the provisions of this chapter." Minn. Stat. § 306.87 (emphasis added).

204.     The Minnesota Supreme Court has opined and wrote in *Erickson v. Sunset Meml. Park Ass'n*, 108 N.W.2d 434, 440–41 (Minn. 1961) that "[t]he public nature and character of its business and interests, as reflected by the provisions of c. 306, by virtue of which the state permits it to operate, should be distinguished from the private character of cemeteries operated by religious and fraternal corporations under c. 307 and cemeteries within the purview of the last sentence of s 306.02, which recognizes the right of a public cemetery association affiliated with a religious corporation to acquire properties to be used exclusively for burial of persons of that particular faith." This is an accurate quote.

205.     The Minnesota Supreme Court in *Sunset Meml. Park Ass'n*, 108 N.W.2d at 440–41, went on opine and wrote that, "From time immemorial cemeteries and interment in them have had a close identification with religion. This identification is natural to religion in civilized cultures. An essential element of many religious beliefs, strongly held for centuries, has been that their communicants must be buried in consecrated ground in which only communicants of that particular faith may be buried." This is an accurate quote.

206.    The Minnesota Supreme Court in *Sunset Meml. Park Ass'n*, 108 N.W.2d at 441, completed its analysis and wrote the following, which is an accurate quote: "The right of burial in a religious or fraternal cemetery derives from membership. It is for that reason that church cemeteries are classified as private cemeteries in which the exclusive burial of communicants of a religious faith may be practiced in accordance with its beliefs."

207.    Steelmantown Church and Loving Earth believe that the Minnesota Legislature enacted Minn. Stat. ch. 307 to govern the establishment of private cemeteries. The statutory provisions provide the Church a statutory right to establish a private cemetery on property the Church owns.

208.    As previously described, the private cemetery Steelmantown Church and Loving Earth seek to establish is consistent with their interpretation of Universal Ministries beliefs and the Plaintiffs religious practices to accept the remains of all deceased individuals from all religious faiths in the private cemetery.

209.    Steelmantown Church and Loving Earth believe that the legislature's intent under Minn. Stat. § 307.01, the provision of which as interpreted in *Sunset Meml. Park Ass'n* to require a private cemetery to serve only one particular faith serves no secular purpose.

210.    Steelmantown Church and Loving Earth believe that the legislature's intent under Minn. Stat. § 307.01, as interpreted in *Sunset Meml. Park Ass'n*, to require a private cemetery to serve only one particular faith, favors one type of religious faith over another religious faith, here, Universal Ministries as previously described and practiced by Steelmantown Church and all Plaintiffs.

211.    In other words, Steelmantown Church and Loving Earth believe that the provision as interpreted, "that church cemeteries are classified as private cemeteries in which the exclusive burial of communicants of a religious faith may be practiced in accordance with its beliefs," referencing Minn. Stat. ch. 307, inhibits the practices of the beliefs embodied within Universal Ministries as previously described and practiced by Steelmantown Church and the Plaintiffs.

212.    Steelmantown Church and the Plaintiffs believe the legislature through Minn. Ch. 307, as the intent is interpreted by the State Supreme Court, forces the government to entangle itself with the religious affairs of the Church and the Plaintiffs. Here, Carlton County officials questioned the legitimacy of Steelmantown Church as a religious corporation to deny its establishment of a private cemetery that would accept all faiths in the County under Minn. Stat. ch. 307.

213.    Carlton County specifically rejected Steelmantown Church's survey and plat for recording (through Loving Earth) because the County concluded that in accepting all faiths to use the planned cemetery the Church was not a religious corporation under Minn. Ch. 307 and thus, qualify to establish a private cemetery.  To reach that conclusion, the County necessarily entangled itself in interpreting Steelmantown Church's and the Plaintiffs religious beliefs and practices as they interpret their faith as Universal Ministry members and ministers.

214.    To the extent the interpretation "that church cemeteries are classified as private cemeteries in which the exclusive burial of communicants of a religious faith may be practiced in accordance with its beliefs," under Minn. Stat. ch. 307 excludes Steelmantown

Church from exercising its religious beliefs and practices, violates the Establishment Clause

of the U.S. Constitution in favoring one religious belief over another. Hence, the

interpretation as applicable to Minn. Stat. ch. 307 is unconstitutional and therefore, this

Court should declare the interpretation and to the extent necessary the affected provision

under Minn. Stat. ch. 307 as unconstitutional in this context.

215. This Court should declare that Minn. Stat. ch. 307 cannot favor one religious

belief or practice or both, over another.

216. The Defendants actions and decisions affecting the Plaintiffs reveal that the

Defendants have violated the Establishment Clause of the U.S. Constitution.

217. Further, Minn. Stat. ch.  307 in the interpretative context revealed, also

violates the Establishment Clause of the U.S. Constitution on its face or as applied, or both.

218. The Defendants refusal to record the Steelmantown Church's survey and plat

map as a private cemetery has irreparably harmed the Church and Loving Earth insofar as

they cannot open the private cemetery on their property in Blackhoof, Minnesota.

219. Loving Earth has had to turn away individuals or families who wish to have

their deceased loved ones at the Steelmantown Church's private cemetery because of the

Defendant actions.

220. Loving Earth is unable to use the Steelmantown Church's private property in

the manner intended by Connell consistent with the religious practices of the Church.

221. The Carlton County officials actions have meaningfully curtailed the Plaintiffs

ability to express adherence to their religious faith or practices. Hence, they have denied the

Plaintiffs' reasonable opportunity to engage in those activities that are fundamental to their

religious faith as further expressed and practiced through the planned establishment of a private green burial cemetery open to all deceased individuals who believe in a God regardless of their religious denomination.

222.    The Carlton County officials' actions have prevented the Plaintiffs ability to express adherence to their religious faith or practices. They denied the Plaintiffs' reasonable opportunity to engage in those activities that are fundamental to their religious faith as further expressed and practiced through the planned establishment of a private green burial cemetery open to all deceased individuals who believe in a God regardless of their religious denomination.

223.    Through the Defendants actions as previously described, either individually or collectively or both, have injured the Steelmantown Church, and Loving Earth, irreparably by the past, present, and future deprivations of their constitutional rights to use their property and to engage in establishing a private cemetery that does not harm the public.

224.    The Defendants individually or collectively or both, by their actions, has deprived the Steelmantown Church and Loving Earth their constitutional right to use the Steelmantown Church's property as a private cemetery under either the U.S. Constitution or the Minnesota Constitution or both.

225.    This Court should permanently enjoin Carlton County from favoring one religious belief over another when examining applications regarding recordings of property use made under Minn. Stat. ch. 307.

226.    This Court should declare and order that Carlton County must entertain any application for recording a property use under Minn. Ch. 307 by Steelmantown Church, through Loving Earth, and record their survey and plat map accordingly.

227.    The Court should impose any other or all other declaratory or injunctive relief available suitable to cure the alleged violations of the constitutional rights of the plaintiffs under this claim, not otherwise specifically stated or accounted for, including, if appropriate, attorney fees and costs.

### III.
### Violation of the Free Exercise Clause

**Carlton County's action to deny to record Steelmantown Church's survey and plat map for a private cemetery because it refused to recognize the Church as a "religious corporation," violates the Free Exercise Clause.**

> **The application of Minn. Ch. 307 to suggest it is applicable only to one particular type of religious belief to establish a private cemetery is a violation of the Free Exercise Clause.**

228.    Plaintiffs assert and incorporate all previous allegations as if restated to support this claim.

229.    The Free Exercise Clause of the First Amendment, which has been made applicable to the States by incorporation into the Fourteenth Amendment, see *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.... " U.S. Const., Amdt. 1 (emphasis added.).

230.    The U.S. Supreme Court has written in *Empl. Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 877 (1990), as accurately quoted, that "The free exercise of

religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." The Steelmantown Church and the Plaintiffs agree with the Supreme Court's statement as quoted.

231.    The U.S. Supreme Court has written in *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 534 (1993), as accurately quoted that "The principle that government, in pursuit of legitimate interests, cannot in a selective manner impose burdens only on conduct motivated by religious belief is essential to the protection of the rights guaranteed by the Free Exercise Clause." The Steelmantown Church and the Plaintiffs agree with the Supreme Court's statement as quoted.

232.    The U.S. Supreme Court has written, as accurately quoted in part, that "[o]fficial action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality. The Free Exercise Clause protects against governmental hostility which is masked, as well as overt. 'The Court must survey meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders.'" *Church of Lukumi Babalu Aye, I*nc., quoting *Walz v. Tax Comm'n of New York City*, 397 U.S. 664, 696 (1970) (Harlan, J., concurring). The Steelmantown Church and the Plaintiffs agree with the Supreme Court's statement as quoted.

233.    The Steelmantown Church and Loving Earth believes that under the Free Exercise Clause, a law or rule, or the application of a law or rule that is not both neutral and generally applicable is subject to heightened scrutiny by this Court.

234.    As the U.S. Supreme Court has written in *Masterpiece Cakeshop v. Colorado Civ. Rights Comm'n*, 584 U.S. 617, 638 (2018), quoting Church of *Lukumi Babalu Aye, In*c., 508 U.S.

at 534 and accurately quoted in part, that "[t]he Free Exercise Clause bars even 'subtle departures from neutrality' on matters of religion." The Steelmantown Church and the Plaintiffs agree with the Supreme Court's statement as quoted.

235.    Carlton County, as previously explained in this Complaint, rejected and denied the Steelmantown Church's surveyed and plat map, through Loving Earth, because County officials did not accept the Steelmantown Church as a religious corporation under the application of Minn. Stat. Ch. 307. This is attributed to in particular within the phrase as accurately quoted, "*any religious corporation* may establish a cemetery on the person's or *corporation's own land* in the following manner: The land shall be surveyed and a plat thereof made." Emphasis added. As such, the statutory provisions of Minn. Stat. ch. 307 provides the Church a statutory right to establish a private cemetery on property the Church owns.

236.    Steelmantown Church and the Plaintiffs believe that a law or rule is not neutral if it singles out particular religious conduct for adverse treatment, such as, but not limited to a "religious gerrymander," an impermissible attempt to target certain individuals and their religious practices.

237.    The Carlton County defendants have engaged in impermissible actions to target Steelmantown Church and Loving Earth regarding their religious practices.

238.    As previously alleged, Steelmantown Church and the Plaintiffs believe that the legislature's intent under Minn. Stat. § 307.01, as interpreted in *Sunset Meml. Park Ass*'n to require a private cemetery to serve only one particular faith serves no secular purpose.

239.    Steelmantown Church and the Plaintiffs believe that the legislature's intent under Minn. Stat. § 307.01, as interpreted in *Sunset Meml. Park Ass'n* to require a private

cemetery to serve only one particular faith favors one type of religious faith over another religious faith. As previously described, Universal Ministries' religious tenant accepts all individuals who believe in a God, regardless of their religious denomination or affiliation and is practiced through the planned establishment of a private green burial cemetery in Carlton County. The Plaintiffs follow this religious tenant.

240.    In other words, Steelmantown Church and the Plaintiffs believe that as interpreted, the legislative intent (as previously described) attributed to Minn. Stat. ch. 307, inhibits the practices of the beliefs embodied within Universal Ministries as previously described and practiced by Steelmantown Church and the Plaintiffs.  Steelmantown Church and the Plaintiffs believe the legislative intent is a substantial burden as it significantly inhibits or constrains the conduct or expression of the Church's religious beliefs a practiced and expressed in the establishment of a private green burial cemetery open to all deceased individuals who believe in a God regardless of their respective religious denomination.

241.    Likewise, the actions of Carlton County officials, by their rejection and denial to record the Steelmantown Church's survey and plat map, through Loving Earth, because the County refuses to recognize Steelmantown Church as a religious corporation under Minn. Stat. § 307.01, the County has singled out the Church and the Plaintiffs because of their religious practices.

242.    The Carlton County officials actions have meaningfully curtailed the Plaintiffs ability to express adherence to their religious faith or have otherwise denied the Plaintiffs' reasonable opportunity to engage in those activities that are fundamental to their religious faith. The planned establishment of a private green burial cemetery open to all deceased

individuals who believe in a God regardless of their religious denomination is a central tenant of the Plaintiffs religious beliefs.

243.    The Carlton County officials' acts or decisions have prevented the Plaintiffs ability to express adherence to their religious faith. The Defendants have further denied the Plaintiffs' reasonable opportunity to engage in those activities that are fundamental to their religious faith as further expressed and practiced through the planned establishment of a private green burial cemetery open to all deceased individuals who believe in a God regardless of their religious denomination.

244.    The Defendants actions reveal that they have violated the Free Exercise Clause of the U.S. Constitution.

245.    Further, Minn. Stat. ch. 307, in the context revealed regarding the intent of the Minnesota State Legislature also violates the Free Exercise Clause of the U.S. Constitution on its face and as applied.

246.    This Court should declare that the Carlton County defendants have violated the Free Exercise Clause of the U.S. Constitution.

247.    This Court should permanently enjoin Carlton County from favoring one religious belief over another when examining applications regarding recordings of property use made under Minn. Stat. ch. 307.

248.    This Court should declare and order that Carlton County must entertain any application for recording a property use under Minn. Stat. ch. 307 by Steelmantown Church, through Loving Earth, and record their survey and plat map accordingly.

249.    The Court should impose any other or all other declaratory or injunctive relief available suitable to cure the alleged violations of the constitutional rights of the plaintiffs under this claim, not otherwise specifically stated or accounted for, including, if appropriate, attorney fees and costs or any other relief this Court determines as applicable or appropriate.

## IV

**Violation of the First Amendment Religious Clauses, the Free Exercise Clause and Establishment Clause under the Church Autonomy Doctrine.**

> **Carlton County's demand that the Steelmantown Church run its planned cemetery as a "public cemetery" and be organized as a religious entity to conform to the provisions under Minn. Stat. ch. 306 is a direct violation of the Church Autonomy Doctrine, interfering with the internal organization of the Church.**

250.    Plaintiffs assert and incorporate all previous allegations as if restated to support this claim.

251.    The Free Exercise Clause of the First Amendment, which has been made applicable to the States by incorporation into the Fourteenth Amendment, *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.... " U.S. Const., Amdt. 1 (emphasis added.).

252.    The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Establishment Clause applies to the states through the Due Process Clause of the Fourteenth Amendment.

253.    The Plaintiffs believe that the Free Exercise Clause and the Establishment Clause, together with the Free Speech Clause and the implicit right of association of the First Amendment of the U.S. Constitution, Steelmantown Church has the right of Church Autonomy as a right provided to churches to be free from government control with regard to their internal affairs.  The Plaintiffs further believe this concept as they have described regarding Church Autonomy is found within the Minnesota Constitution.

254.    The Plaintiffs believe that the concept of Church Autonomy includes the right of churches to select their ministers, control their doctrine, and determine how the organization is to be governed without interference from the government.

255.    The Plaintiffs believe that the internal governance of the church, and here, the Steelmantown Church, are functions that go to the heart of a religious entity's ability to maintain control over the organization and command its destiny. Therefore, the Plaintiffs believe that Church Autonomy is an exclusive place for internal operations be it characterized as religious or secular. Hence, it is for the church, here the Steelmantown Church, as a religious corporate and organizational entity, to occupy this center of authority to the exclusion of other powers, such as actions of the government that seeks to interfere with the internal affairs of the church.

256.    The U.S Supreme Court in *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 342 (1987), as accurately quoted, wrote that "[d]etermining…certain activities are in furtherance of an organization's religious mission, and that only those committed to that mission should conduct them, is thus a means by which a religious community defines itself. Solicitude for a church's ability to do so reflects

the idea that furtherance of the autonomy of religious organizations often furthers individual religious freedom as well." The Plaintiffs agree with the Supreme Court's written statement.

257.    The Steelmantown Church, and its religious officials, decide how the Church is organized and how it functions internally as a religious entity. Internal decisions of the Church also relate to religious practices that extend to the Church's cemeteries.

258.    As part of the Steelmantown Church's choice of ecclesiology and organizational polity that involves the practice of green burial cemeteries open to all people who believe in a God regardless of their personal religious denomination, is reflective of the Plaintiffs' Universal Ministry beliefs.

259.    Carlton County officials denied Steelmantown Church, a foreign non-profit religious corporation, the use of its property located within the County as a private green burial cemetery that reflects an extension of the practices of the Church's religious beliefs. The Church decided to operate its Carlton County property as a private cemetery open to all believers in God regardless of their respective religious affiliations. Hence, the Church further decided to identify itself as a religious corporation under Minn. Stat. ch. 307. Furthermore, he statutory provisions of Chapter 307 provide the Church a statutory right to establish a private cemetery on property the Church owns.

260.    Carlton County officials rejected the Steelmantown Church as a foreign non-profit religious corporation that sought to have documentation recorded under Minn. Stat. ch. 307 with the Carlton County Recorder's Office. While the Church sought to use the Church's property as a private cemetery, County officials instead demanded the Church recognize its cemetery as a "public cemetery" under Minn. Stat. ch. 306, which is

inconsistent with the religious practice of Steelmantown Church and disregards the Steelmantown Church as autonomous religious entity. Thus, Carlton County officials are interfering with the internal organizational operation and function of the Church.

261.    Steelmantown Church officials identify its religious corporation and internal organization and function as wholly within the provisions of Minn. Ch. 307.

262.    Carlton County officials, insisting that Steelmantown Church falls within and must be organized to meet the provisions of Minn. Ch. 306, is governmental interference with internal church decisions that affects the faith and mission of the church itself.

263.    Carlton County officials cannot demand that Steelmantown Church organize itself in a manner to meet the provisions of Minn. Ch. 306 to satisfy the County's belief about how the Church should be internally organized, make its decisions. or practice its religious beliefs related to practices associated with a private cemetery to be established in the County.

264.    Carlton County official demands are inconsistent with Minn. Stat. § 306.87, subd. 3, that is accurately quoted in part that "All cemeteries started or established as public cemeteries and all cemeteries hereafter started or established, except cemeteries established by religious corporations, are public cemeteries within the provisions of . . . chapter [306]."

265.    Carlton County official demands as it relates to Minn. Stat. ch. 306, is the interference of the internal governance of the Steelmantown Church is a violation of either the Establishment Clause or the Free Exercise Clause, or both, of the First Amendment of the U.S. Constitution.

266.    Carlton County official demands and actions interfering with the internal governance of the Steelmantown Church is a violation of the applicable religious clauses of the Minnesota Constitution, art. I, § 16.

267.    The Carlton County officials demanding Steelmantown Church to organize in a manner consistent with Minn. Ch. 306, has caused the Church to refuse and reject the request of family or friends of the deceased to be buried at the planned private green burial cemetery on property owned by the Church in Blackhoof, located in Carlton County, Minnesota.

268.    The Carlton County officials actions have meaningfully curtailed the Plaintiffs ability to express adherence to their religious faith. The Defendants have denied the Plaintiffs' a reasonable opportunity to engage in those activities that are fundamental to their religious faith as further expressed and practiced through the planned establishment of a private green burial cemetery open to all deceased individuals who believe in a God regardless of their religious denomination.

269.    The Carlton County officials actions have prevented the Plaintiffs ability to express adherence to their religious faith. The Defendants have denied the Plaintiffs' a reasonable opportunity to engage in those activities that are fundamental to their religious faith as further expressed and practiced through the planned establishment of a private green burial cemetery open to all deceased individuals who believe in a God regardless of their religious denomination.

270.    Carlton County officials have violated the Church Autonomy Doctrine as protected under the First Amendment.

271.    This Court should declare that the Defendants have violated the Church Autonomy Doctrine of the First Amendment.

272.    This Court should issue permanent injunctive relief in the form or manner as the Court deems necessary to prevent the Defendants from enforcing any law, ordinance, rule, or regulation promulgated in a manner that would interfere with the Church Autonomy doctrine as applied to the Plaintiffs in establishing a private cemetery consistent with the Steelmantown Church's religious practices.

273.    This Court should direct the Carlton County officials to record the necessary documents in the County's property records the plat and survey (mylars) that are consistent with the secular laws under Minn. Stat. ch. 307, within a short, but reasonable time frame after the Plaintiffs submissions to the proper County officials.

274.    This Court should further determine any and all further relief that it deems necessary or within its jurisdictional authority to prevent Carlton County and all County officials from violating the Church Autonomy doctrine of the First Amendment against any one of the Plaintiffs consistent with their religious beliefs.

275.    This Court should grant relief as it relates to any applicable law to award attorney fees and costs of any kind to the Plaintiffs or any other relief this Court determines as applicable or appropriate.

**V**

**Violation of the Religious Land Use and Institutionalized Persons Act of 2000 (42 U.S.C. §§ 2000cc, et seq.)**

276.    Plaintiffs assert and incorporate all previous allegations as if restated to support this claim.

277.    The Steelmantown Church owns property in Blackhoof, Minnesota, designated by Steelmantown to be a cemetery is allowed under Carlton County governing zoning ordinances as previously described.  The provisions of Minn. Stat. ch. 307 establish a statutory right for the Church to establish a private cemetery on property the Church owns.

278.    The Steelmantown Church owned property in Blackhoof, Minnesota, designated by Steelmantown to be a cemetery, a platted for recording and presented to the Carlton County Recorder's Office, did not require a variance under the County zoning ordinances.

279.    The Steelmantown Church owns property in Blackhoof, Minnesota, designated by Steelmantown to be a private cemetery, a platted for recording and presented to the Carlton County Recorder's Office, did not require a Conditional Use Permit under the County zoning ordinances.

280.    The Steelmantown Church owns property in Blackhoof, Minnesota, designated by Steelmantown to be a cemetery is not a subdivision as defined under Carlton County's Ordinance no. 23, which is accurately quoted as follows: "Subdivision – The division of land into two (2) or more lots or parcels for the purpose of transfer of ownership or building development, or, if a new public road is involved, any division of a parcel of land."

281.     The Steelmantown Church owns property in Blackhoof, Minnesota, designated by Steelmantown to be a private cemetery, a platted for recording and presented to the Carlton County Recorder's Office, did not require approval of the County Board of Commissioners, as the Plaintiffs believe, under Minn. Stat. § 505.03, titled "Government Approval."

282.     The location of the Steelmantown Church owned property in Blackhoof, Minnesota, is not within unincorporated land of Carlton County that would otherwise require plat approval by the Carlton County Board of Commissioners.

283.     Because the Steelmantown Church owned property in Blackhoof, Minnesota, designated by Steelmantown to be a private cemetery, and is not a subdivision and platting of land within the unincorporated areas of Carlton County, the Church or Loving Earth, or both did not need Board approval to have the plat approved by the Board for recording as a religious corporation.

284.     The Religious Land Use and Institutionalized Persons Act (RLUIPA) is a federal law. Congress enacted RLUIPA in 2000, the Plaintiffs believe, to protect religious freedom, specifically as it concerns land use regulations and here, Steelmantown Church and Loving Earth (as well as the rights of institutionalized individuals, like those in prison or other governmental facilities used to detain individuals—but, not applicable in this case).

285.     Under 42 U.S.C. § 2000cc (a), (1)(A), and (1)(B) is accurately quoted in part as follows:

      (a)Substantial burdens
          (1) General Rule

No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

286.    The U.S. Supreme Court, in *Holt v. Hobbs*, 574 U.S. 352, 357 (2015) wrote that, "RLUIPA 'provide[s] greater protection for religious exercise than is available under the First Amendment.'" The statement is accurately quoted. The Plaintiffs agree with the statement the U.S. Supreme Court wrote.

287.    The Court of Appeals for the Eighth Circuit, in *Kennemore v. Anderson,* No. 4:24-CV-00188-SRC, 2025 WL 931979, at *3–4 (E.D. Mo. Mar. 27, 2025), wrote that "'RLUIPA explicitly provides for a cause of action to enforce the heightened free exercise right it creates.'" The statement is accurately quoted from an earlier case, *Van Wyhe v. Reisch*, 581 F.3d 639, 649 (8th Cir. 2009) (citing 42 U.S.C. § 2000cc–2(a)–(g)). The Plaintiffs agree with the stated quote as written by the U.S. Court of Appeals for the Eighth Circuit.

288.    The U.S. Supreme Court in *Mast v. Fillmore Cnty., Minnesota*, 141 S. Ct. 2430, 2432 (2021) wrote that RLUIPA requires the application of "strict scrutiny." The Plaintiffs agree with the U.S. Supreme Court's written statement.

289.    The U.S. Supreme Court in *Mast v. Fillmore Cnty., Minnesota*, 141 S. Ct. 2430, 2432 (2021) wrote that "[u]nder that form of review [strict scrutiny], the government bears

the burden of proving both that its regulations serve a 'compelling' governmental interest—
and that its regulations are 'narrowly tailored.' [*Fulton v. Philadelphia*, 593 U. S. 522, 540-541
(2021)]; 42 U.S.C. § 2000cc(a)(1) ('No government shall impose or implement a land use
regulation in a manner that imposes a substantial burden on the religious exercise of a
person ... unless the government demonstrates that imposition of the burden ... is in
furtherance of a compelling government interest; and is the least restrictive means of
furthering that compelling governmental interest')'". The Plaintiffs agree with the U.S.
Supreme Court's written statement.

290.    While a county may have a general interest in statutes and zoning ordinances
or regulations regarding land use, and here, Carlton County's interest of not recording the
plat and survey of Steelmantown Church, through Loving Earth to establish a private
cemetery on Church owned property zoned for cemeteries, the County must scrutinize the
asserted harm of denying the Church as a particular religious entity the recording of the
permitted use of the property as a cemetery.

291.    Carlton County must demonstrate the compelling government interest of
interfering with the religious practices of Steelmantown Church to establish a private green
burial cemetery on land zoned for cemeteries. In other words, Carlton County must
demonstrate the imposition of the burden upon Steelmantown Church is in furtherance of a
compelling governmental interest and is the least restrictive means of furthering that
compelling governmental interest.

292.    The Plaintiffs believe Carlton County Defendants cannot meet this burden.

293.   A natural or green burial cemetery, open to all religious denominations that believe in a God, as contemplated and planned for Carlton County by Steelmantown Church, is an extension of the Church's religious beliefs and practices.

294.   The Steelmantown Church's and the Plaintiffs religious beliefs are sincerely held. As previously explained, Universal Ministries includes members from all Faiths and walks in life founded in New Testament and original Scriptures from the time of Christ and open to all wishing to share spiritual faith and journey. A universalist for example, believes that all people will ultimately be saved and reconciled with God, regardless of their actions or beliefs, emphasizing God's universal love and mercy.

295.   Because the County's decision not to record the plat and survey of Steelmantown Church to use the property it owns for the purpose of a cemetery under Minn. Stat. ch. 307, as the zoning code specifically allows, the County places a substantial burden on the exercise of the Church's religious practices.

296.   Steelmantown Church, through Loving Earth, cannot use its property for the use of its religious cemetery. The pressure faced means the Church cannot exercise its religious beliefs, the practice of which also includes as an extension of those beliefs to the use of the planned establishment of a green burial cemetery.

297.   The County has no authority to claim Steelmantown Church cannot exercise its religious beliefs as a foreign religious organization under Minn. Stat. ch. 307.

298.   Or, the County misused its authority to claim Steelmantown Church cannot exercise its religious beliefs as a foreign religious organization under Minn. Stat. ch. 307, as it interferes with the religious beliefs of the Church.

299.    The County has no authority to claim Steelmantown Church must exercise its religious beliefs in a manner consistent with Minn. Stat. ch. 306, which would require a reorganization of the Church's internal religious practices or decision-making as a non-profit religious corporation including but not limited to, its organizational hierarchy in a manner as outlined under Minn. Stat. ch. 306.

300.    Carlton County's denial to record the Steelmantown Church's plat and survey, under Minn. Stat. ch. 307, denied the Church's religious practice to establish a cemetery consistent with its religious Universal Ministry beliefs. The decision is oppressive to the extent it prohibits the exercise and practice of the Church's religious beliefs. The decision of the County would require the Church to reorganize in a manner inconsistent with its present internal governance.

301.    Carlton County's further demands that Steelmantown Church record documentation with the County's Recorder's Office under the statutory provisions of Minn. Stat. ch. 306. The County's demand places pressure upon the Church, as a non-profit foreign religious corporation, that bars the Church from using its property in the exercise of its religion in the establishment of a private green burial cemetery under Minn. Stat. ch. 307. As previously explained, the green burial cemetery represents the Church's religious beliefs and practices in accepting the remains of the deceased regardless of their religious denomination.

302.    Carlton County further imposed a land use restriction upon Steelmantown Church when County officials refused to record the Church's plat and survey as a religious corporation under Minn. Stat. ch. 307. The decision was arbitrary, capricious, or unlawful.

303.    Carlton County officials disregarded the objective criteria under Minn. Stat. ch. 307 and the documents for recording in the County's Recorder's Office and thus acted adversely to the Steelmantown Church.

304.    The defendant Carlton County officials were aware of public opposition to the Steelmantown Church and Loving Earth's plans to establish a green burial cemetery on the property the Church owned.

305.    Carlton County officials, here, the Defendants, were aware of public opposition to the Steelmantown Church and Loving Earth's plans to establish a green burial cemetery on the property the Church owned. The public opposition included citizens that expressed that they did not want the deceased of the Muslim faith to be buried at the cemetery. The public opposition also included people who and did not want people from northern Minneapolis to come to their community either to be buried or to visit their loved ones at the Church's planned cemetery.  *See* **Exhibit 6**.

306.    The protesting citizens of Carlton County or Blackhoof, Minnesota were a small but influential group within the community. *See, e.g., Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 346 (2d Cir. 2007).

307.    Carlton County Board officials, and County officials acted in response to the opposition and gave undue deference to the public opposition of the small but influential group of neighbors or members of the community. *See, e.g., Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 346 (2d Cir. 2007) (local regulators disregard of objective criteria and instead acted adversely to a religious organization based on the objections of a "small but influential" group in the community). This occurred without providing the

Steelmantown Church or Loving Earth an opportunity to be heard to specifically address the County's rejection of the Church's recording documents and the County's demand the Church to meet the provisions of Minn. Stat. ch. 306 instead of Minn. Stat. ch. 307 and have that decision overturned.

308.    Indeed, Carlton County officials acted in a manner that also revealed they based their decisions to deny the Steelmantown Church documents for recording under Minn. Stat. ch. 307, as a foreign non-profit religious corporation, on repeated misunderstandings of legal principles, such as the Free Exercise Clause, the Establishment Clause, the Church Autonomy doctrine, or RLUIPA. *See, e.g., Saints Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 901 (7th Cir. 2005).

309.    Moreover, at least one elected member of the Carlton County Board, Mark Thell, acting for the Board, sought a moratorium from the Minnesota State Legislature, through and with the assistance of the County's legislative elected officials to obtain a two-year moratorium to prevent Steelmantown Church to establish its planned green burial cemetery.

310.    This Court should issue permanent injunctive relief in the form or manner as the Court deems necessary to prevent the Defendants from enforcing any law, ordinance, rule, or regulation promulgated in a manner that would interfere with RLUIPA as applied to the Plaintiffs in establishing a private cemetery consistent with the Steelmantown Church's religious practices.

311.    This Court should direct the Carlton County officials to record the necessary documents in the County's property records the plat and survey (mylars) that are consistent

with the secular laws under Minn. Ch. 307, within a short, but reasonable time frame after the Plaintiffs submissions to the proper County officials.

312.    This Court should further determine any other further relief that it deems necessary or within its jurisdictional authority to prevent Carlton County and all County officials from violating the RLUIPA against any one of the Plaintiffs consistent with their religious beliefs.

313.    This Court should grant relief as it relates to any applicable law to award attorney fees and costs of any kind to the Plaintiffs or any other relief this Court determines as applicable or appropriate.

## VI.    The Plaintiffs demand a jury trial.

314.    The Plaintiffs demand a jury trial.

## RELIEF REQUESTED

The Plaintiffs respectfully request the following relief:

1.  This Court should declare that the defendants, individually or collectively, or both, violated Article I, § 13 of the Minnesota Constitution regarding the property rights of the Plaintiff Steelmantown Church;

2.  This Court should declare that the defendants, individually or collectively, or both, violated the property rights of the Plaintiff Steelmantown Church under Fifth Amendment of the U.S. Constitution;

3.  This Court should issue permanent injunctive relief in the form or manner as the Court deems necessary to prevent the Defendants from violating the

property rights of the Plaintiff Steelmantown Church under Article I, § 13 of the Minnesota Constitution;

4. This Court should issue permanent injunctive relief in the form or manner as the Court deems necessary to prevent the Defendants from violating the property rights of the Plaintiff Steelmantown Church under the Fifth Amendment of the U.S. Constitution Article I, § 13 of the Minnesota Constitution;

5. The Court declare that Steelmantown Church has a constitutional right to use its property as a private cemetery under Minn. Stat. ch. 307;

6. The Court declare that Steelmantown Church has a statutory right to use its property as a private cemetery under Minn. Stat. ch. 307;

7. The Plaintiffs seek a court order to permanently enjoin the Defendants from denying the Steelmantown Church of its statutory right under Minn. Stat. ch. 307 to use its property as a private cemetery.

8. The Plaintiffs seek a court order to permanently enjoin the Defendants from denying the Steelmantown Church of its constitutional right under Minn. Stat. ch. 307 to use its property as a private cemetery.

9. This Court should declare that the Defendants, individually or collectively, or both violated RLUIPA;

10. This Court should issue permanent injunctive relief against all Defendants, individually or collectively, or both , from enforcing any law, ordinance, rule, or regulation promulgated in a manner that would interfere with RLUIPA as

applied to the Plaintiffs in establishing a private cemetery consistent with the Steelmantown Church's religious practices;

11. This Court should direct the Carlton County officials to record the necessary documents in the County's property records the plat and survey (mylars) that are consistent with the secular laws other than Minn. Stat. ch. 306, within a short, but reasonable time frame after the Plaintiffs submissions to the proper County officials;

12. This Court should further determine any and all further relief that it deems necessary or within its jurisdictional authority to prevent Carlton County and all County officials from violating the RLUIPA against any one of the Plaintiffs consistent with their religious beliefs.

13. This Court should declare that Minn. Stat. ch. 307, violates the Free Exercise Clause of the U.S. Constitution on its face and as applied, and is unconstitutional as the intent of the legislature has been proscribed;

14. This Court should declare that Minn. Stat. ch. 307, violates the Establishment Clause of the U.S. Constitution on its face and as applied, and is unconstitutional as the intent of the legislature has been proscribed;

15. This Court should declare that the Carlton County defendants, individually or collectively, or both have violated the Free Exercise Clause of the U.S. Constitution;

16. This Court should permanently enjoin Carlton County from favoring one religious belief over another when examining applications regarding recordings of property use made under Minn. Stat. ch. 307;

17. This Court should declare that the Defendants individually or collectively, or both have violated the Church Autonomy doctrine of the First Amendment;

18. This Court should declare that the provisions of Minn. Stat. ch. 307 establish a statutory right for the Church to establish a private cemetery on property the Church owns;

19. This Court should issue permanent injunctive relief in the form or manner as the Court deems necessary to prevent the Defendants individually or collectively or both, from enforcing any law, ordinance, rule, or regulation promulgated in a manner that would interfere with the Church Autonomy doctrine as applied to the Plaintiffs in establishing a private cemetery consistent with the Steelmantown Church's religious practices;

20. This Court should direct the Carlton County officials to record the necessary documents in the County's property records the plat and survey (mylars) that are consistent with the secular laws under Minn. Stat. ch. 307, within a short, but reasonable time frame after the Plaintiffs submissions to the proper County officials;

21. This Court should further determine any and all further relief that it deems necessary or within its jurisdictional authority to prevent Carlton County and all County officials from violating the Church Autonomy doctrine of the First

Amendment against any one of the Plaintiffs consistent with their religious beliefs;

22. This Court should grant relief as it relates to any applicable law to award attorney fees and costs of any kind to the Plaintiffs or any other relief this Court determines as applicable or appropriate.

Dated: June 3, 2025                         /s/ Erick G. Kaardal
                                            Erick G. Kaardal, 229647
                                            Mohrman, Kaardal & Erickson, P.A.
                                            150 South Fifth Street, Suite 3100
                                            Minneapolis, Minnesota 55402
                                            Telephone: 612-341-1074
                                            Email: kaardal@mklaw.com
                                            *Attorneys for Plaintiffs*