# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

STEELMANTOWN CHURCH; EDWARD BIXBY; LOVING EARTH MEMORIAL GARDENS, LLC; and MATTHEW CONNELL,

Plaintiffs,

v.

CARLTON COUNTY, MINNESOTA; SARAH PLANTE BUHS, *in her official capacity as Carlton County Commissioner*; MARV BODIE, *in his official capacity as Carlton County Commissioner*; THOMAS R. PROULX, *in his official capacity as Carlton County Commissioner*; SUSAN ZMYSLONY, *in her official capacity as Carlton County Commissioner*; DAN REED, *in his official capacity as Carlton County Commissioner*; KRISTINE BASILICI, *in her official capacity as Carlton County Recorder of the Carlton County Recorder's Office*; and CHRIS BERG, *in his official capacity as Carlton County Zoning and Environmental Services Administrator*,

Defendants.

Case No. 25-cv-2323 (LMP/LIB)

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Erick G. Kaardal, **Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN**, for Plaintiffs.

Kristin C. Nierengarten and Shelby M. Borthwick, **Squires, Waldspurger & Mace, P.A., Minneapolis, MN**, for Defendants.

Plaintiffs Steelmantown Church ("Steelmantown"), Edward Bixby, Loving Earth Memorial Gardens, LLC ("Loving Earth"), and Matthew Connell (collectively, "Plaintiffs") brought this lawsuit relating to their attempt to establish a private cemetery in Carlton County, Minnesota (the "County") asserting several claims against the County, Sara Plante Buhs, Marv Bodie, Thomas R. Proulx, Susan Zmyslony, Dan Reed, Kristine Basilici, and Chris Berg (collectively, "Defendants"). ECF No. 4. Defendants move to dismiss Plaintiffs' amended complaint either because it presents nonjusticiable claims or because it fails to state a plausible claim for relief under Rule 12(b)(6). ECF No. 12. For the reasons set forth in this Order, Defendants' motion is granted.

**FACTUAL BACKGROUND[1]**

Bixby is the president of Steelmantown, a New Jersey 501(c)(3) nonprofit corporation that is registered as a foreign nonprofit corporation in Minnesota. ECF No. 4 ¶¶ 9–11, 14. Steelmantown identifies itself as a "religious corporation." *Id.* ¶ 58. Connell is the president and manager of Loving Earth, a Minnesota limited liability company. *Id.* ¶¶ 19–20. Buhs, Bodie, Proulx, Zmyslony, and Reed are members of the County's Board of Commissioners; Basilici is the County Recorder; and Berg is the County's Zoning and Environmental Services Administrator (collectively, the "County Officials"). *Id.* ¶¶ 30–37.

---

[1]    For purposes of assessing Defendants' motion to dismiss, the Court accepts the factual allegations in Plaintiffs' amended complaint as true. *Brokken v. Hennepin County*, 140 F.4th 445, 450 (8th Cir. 2025).

2

In 2023, Steelmantown acquired an approximately twenty-acre parcel of land (the "Property") in the County. *Id.* ¶¶ 67, 134. Steelmantown intends to establish a private cemetery on the Property, managed and operated by Loving Earth, for the purpose of performing "green burials." *Id.* ¶¶ 26, 65, 70. Plaintiffs describe green burials as the burial of bodies "directly in the earth with organic materials and without embalming using synthetic chemicals," which is "an alternative to conventional burial methods and mortuary customs that require concrete or plastic vaults or liners" or "exotic wood or metal caskets." *Id.* ¶ 70. Establishing and operating a private, green burial cemetery that is open to people of "all religions and all faiths" is "an extension of the religious beliefs" Plaintiffs hold. *Id.* ¶¶ 18, 25, 69. Steelmantown asserts that its proposed cemetery "will comply with all reasonable state and local laws and regulations involving health, safety, or welfare." ECF No. 4 ¶ 81.

The Property is situated in an "A-2" zoning district. *Id.* ¶ 172. Cemeteries that are "platted as private cemeteries" under Minnesota Statutes Chapter 307 ("Chapter 307") are allowed in A-2 districts. ECF No. 4-4 at 50, 52.[2] "Public cemeteries" established under Minnesota Statutes Chapter 306 ("Chapter 306"), however, require a conditional use permit. *Id.* at 52–53.

---

[2] Although the Court primarily considers the allegations in the amended complaint when deciding whether to grant a motion under Rule 12(b)(6), it may consider "matters incorporated by reference or integral to the claim," including "items subject to judicial notice, matters of public record," and "exhibits attached to the complaint whose authenticity is unquestioned." *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citation omitted).

In April 2023, Steelmantown sought to record a plat map and survey for a private cemetery on the Property with the County Recorder's Office, in accordance with Chapter 307. ECF No. 4 ¶ 102. The County Recorder declined to record the plat map and survey on the basis that Chapter 307 did not allow Steelmantown to establish a private cemetery. *See id.* ¶¶ 2, 105–06. The County Recorder informed Steelmantown that, instead, it needed to establish its proposed cemetery under Chapter 306. *See id.* ¶¶ 2, 139.

Around the same time, the Minnesota Legislature enacted a two-year moratorium on establishing new green burial sites starting July 1, 2023, through July 1, 2025, to "allow[] for further study of the environmental impacts of green burials and potential public health risks." ECF No. 4-3 at 5; *see* 2023 Minn. Laws, ch. 70, § 102, subds. 2–3. The Minnesota Legislature directed the Minnesota Department of Health ("DOH") to "develop recommendations for the performance of green burials" while the moratorium was in place. 2023 Minn. Laws, ch. 70, § 102, subd. 3. The DOH published its study and recommendations on January 31, 2025, ECF No. 4-3 at 24–26, and the Minnesota Legislature later incorporated the DOH's recommendations into both Chapter 306 and Chapter 307, which now regulate green burial practices in public and private cemeteries governed by those statutes, Minn. Stat. §§ 306.991, 307.14.

Plaintiffs filed their original complaint in this matter on June 3, 2025. ECF No. 1. One week later, and about three weeks before the state-level moratorium expired, the County enacted its own one-year moratorium ("Interim Ordinance 41"), which paused "the creation or expansion of green burial cemeteries" in the County, so that it may analyze the DOH's study and recommendations and determine "what modifications, if any, are needed"

4

to the County's zoning ordinances.  ECF No. 4-7 at 56–59; *see* ECF No. 4 ¶¶ 156, 158. While Interim Ordinance 41 is in effect, no individual or entity may establish a new green burial cemetery in the County.  ECF No. 4 ¶ 157; ECF No. 4-7 at 58.

Steelmantown filed the operative amended complaint on June 11, 2025, one day after Interim Ordinance 41 was enacted.  ECF No. 4 ¶ 156.  In total, Plaintiffs assert four causes of action, alleging that the County and the County Officials, in their official capacities, have: (1) violated the Establishment and Free Exercise Clauses of the First Amendment to the U.S. Constitution, *id.* ¶¶ 204–52; (2) violated the Freedom of Conscience Clause of the Minnesota Constitution, *id.*; (3) violated the "Church Autonomy Doctrine," *id.* ¶¶ 253–78; and (4) violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*, *id.* ¶¶ 279–316.  Plaintiffs seek a declaration that Defendants' conduct violates their constitutional and statutory rights. Plaintiffs also seek a permanent injunction requiring the County Officials to record Plaintiffs' plat map and survey under Chapter 307.  *Id.* at 64–67.

## ANALYSIS

Although Defendants move to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) on the basis that Plaintiffs have not stated a plausible claim for relief, ECF No. 13 at 6–25, Defendants also argue that Plaintiffs' claims are not justiciable either for lack of standing or because the claims are not ripe for adjudication, *id.* at 25–28. The concept of justiciability "expresses the jurisdictional limitations imposed upon federal courts by the 'case or controversy' requirement" of Article III.  *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974).  Therefore, because a court may not rule

on the merits of any case if it lacks jurisdiction, *Brownback v. King*, 592 U.S. 209, 218 (2021), the Court first must address Defendants' justiciability arguments.

## I.  Justiciability

Defendants contend that Bixby, Loving Earth, and Connell lack standing to bring their claims, ECF No. 13 at 26–27, and that Steelmantown's claims are not ripe for adjudication, *id.* at 27–28.  For the reasons discussed below, the Court agrees that Bixby, Loving Earth, and Connell lack standing, but finds that Steelmantown's claims are ripe for adjudication.

### A.  Standing

Article III standing "is the threshold question in every federal case because it determines the power of the court to entertain the suit." *Becker v. N.D. Univ. Sys.*, 112 F.4th 592, 595 (8th Cir. 2024) (citation modified) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  To establish standing, Plaintiffs must show that they (1) have "suffered an injury in fact," (2) that is "fairly traceable" to the Defendants' conduct, and (3) that is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  If at least one Plaintiff has standing, "the suit may proceed." *Biden v. Nebraska*, 600 U.S. 477, 489 (2023).  But "standing is not dispensed in gross," so Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

To satisfy the injury-in-fact requirement, Plaintiffs must show "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*,

6

504 U.S. 555, 560 (1992)).  Whether a plaintiff can demonstrate injury in fact "often turns on the nature and source of the claim asserted."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) (quoting *Warth*, 422 U.S. at 500).  This means that whether a plaintiff "has a cognizable injury sufficient to confer standing is closely bound up with the question of whether and how the law will grant him relief."  *Id.*

Plaintiffs contend that the "underlying theme" of their claims "pertains to the application of Chapter 307."  ECF No. 17 at 42; *see* ECF No. 4 ¶¶ 220–21 (Count II); *id.* ¶¶ 244–47 (Count III); *id.* ¶¶ 266–68 (Count IV); *id.* ¶¶ 298–303 (Count V).  They specifically request only declaratory relief affirming their right to establish a private cemetery under Chapter 307 and injunctive relief requiring Defendants to record Steelmantown's plat map and survey in accordance with Section 307.01.  *See* ECF No. 4 at 64–67.  Plaintiffs acknowledge, however, that Steelmantown "owns" the Property and do not allege that any other Plaintiff has a direct ownership interest in the Property.  *Id.* ¶ 130.  And Chapter 307 provides that "[a]ny private person and any religious corporation may establish a cemetery *on the person's or corporation's own land*."  Minn. Stat. § 307.01 (emphasis added).  As such, Steelmantown—which "believes [it is] and identifies itself as a religious corporation," ECF No. 4 ¶ 58—is the only Plaintiff with any colorable claim of a statutory right to establish a private cemetery on the Property under Section 307.01, *see* Minn. Stat. § 307.01.  And Steelmantown, as the owner of the Property, is the only Plaintiff to whom the Court could grant the declaratory and injunctive relief Plaintiffs seek.  *See Braden*, 588 F.3d at 591.

7

Plaintiffs argue that the County's actions have "directly affected" Bixby, Loving Earth, and Connell and "the exercise of their religious beliefs and practices," ECF No. 17 at 42, but that is not enough to show that they have standing.  Even assuming Bixby, Loving Earth, and Connell have sufficiently alleged an injury in fact—which this Court does not hold—a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499.  None of those Plaintiffs has any basis to assert a claim premised on a purported statutory right to create a private cemetery on land they do not own.  *See* Minn. Stat. § 307.01.  Instead, they "rest [their] claim to relief" on Steelmantown's "legal rights or interests," *Warth*, 422 U.S. at 499, which is insufficient to establish their own standing.[3]

The Supreme Court has recognized a "limited" exception to this rule for a litigant who demonstrates (1) a "'close' relationship with the [third party] who possesses the right and (2) a "'hindrance' to the possessor's ability to protect [its] own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)); *see also Swanson v. Hilgers*, 151 F.4th 992, 996 (8th Cir. 2025).  Bixby, Loving Earth, and Connell do not meet these criteria.  They allege a close relationship to Steelmantown (the "third party"), but Steelmantown is a party in this case and clearly is not hindered from bringing suit on its own behalf.

---

[3]    This also may be appropriately framed as an issue of "statutory standing," which "has nothing to do with whether there is case or controversy under Article III" but instead "goes to the merits of the claim" and asks "whether the statute gives [a] plaintiff authority to sue." *Miller*, 688 F.3d at 934 (citations omitted).  Here, none of the Plaintiffs except Steelmantown asserts that they own the Property, so Steelmantown is the only Plaintiff that is authorized to sue on the facts alleged here. *See* Minn. Stat. § 307.01.

Finally, at the hearing on Defendants' motion to dismiss, Plaintiffs' counsel asserted that Plaintiffs have raised a claim for damages and that their interest in those damages is enough to confer standing. But that assertion is not supported by Plaintiffs' pleadings. As noted, Plaintiffs only specifically request declaratory and injunctive relief. ECF No. 4 at 64–67. They also request, "if appropriate," an award of "attorney fees and costs," *id.* ¶¶ 230, 252, 278, 316, and "any other relief this Court determines as applicable," *id.* at 67. But nowhere in Plaintiffs' complaint do they expressly request an award of compensatory damages or identify with any degree of specificity how such damages were incurred. To the extent Plaintiffs contend their generic request for "any other relief this Court determines as applicable" is somehow a request for compensatory damages, that is insufficient to demonstrate standing. *See Frost v. Sioux City*, 920 F.3d 1158, 1162 n.1 (8th Cir. 2019) (citation omitted) (holding requests for relief using "broad and non-specific" language like "all such other and further relief as this Court deems just and proper" does not "comport[] with the constitutional requirement of redressability"). And Plaintiffs' purported "interest in attorney's fees is insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *E. Iowa Plastics, Inc. v. PI, Inc.*, 832 F.3d 899, 905 n.4 (8th Cir. 2016) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)).

For these reasons, Bixby, Loving Earth, and Connell lack standing, and, accordingly, their claims are dismissed. Because Steelmantown has standing, however, "the suit may proceed," *Biden*, 600 U.S. at 489, so the Court turns to Defendants' argument that Steelmantown's claims are not ripe.

**B.     Ripeness**

The ripeness doctrine "flows from both the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." *Iowa League of Cities v. EPA*, 711 F.3d 844, 867 (8th Cir. 2013) (citation omitted). Ripeness is "'a question of timing' and is governed by the situation at the time of review, rather than the situation at the time of the events under review." *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000) (quoting *Anderson v. Green*, 513 U.S. 557, 559 (1995) (per curiam)).

When determining whether a plaintiff's claims are ripe, courts evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Iowa League of Cities*, 711 F.3d at 867. The fitness factor requires a court to consider whether a case would "benefit from further factual development," and "cases presenting purely legal questions" are therefore "more likely to be fit for judicial review." *Id.* (citation omitted). The hardship factor requires consideration of "the harm parties would suffer" if the court were to decline to exercise jurisdiction and hear the case. *Id.* These factors are "weighed on a sliding scale, but each must be satisfied 'to at least a minimal degree.'" *Id.* (quoting *Neb. Pub. Power Dist.*, 234 F.3d at 1039). In the context of land-use disputes, "including those involving First Amendment and RLUIPA claims," the ripeness doctrine also "requires a plaintiff to 'obtain a final, definitive position as to how it could use the property from the entity charged with implementing the zoning regulations.'" *Riverside Church v. City of St. Michael*, 205 F. Supp. 3d 1014, 1029

10

(D. Minn. 2016) (quoting *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005)).

Steelmantown's amended complaint satisfies each of these requirements. Its claims largely, if not exclusively, present questions of law which do not require further factual development to resolve. *Iowa League of Cities*, 711 F.3d at 867. The County Recorder's decision not to record Steelmantown's plat map and survey under Chapter 307 was, in effect, a "final, definitive position," at least pertaining to the County's view as to whether Chapter 307 applies. *Riverside Church*, 205 F. Supp. 3d at 1029 (citation omitted). And Steelmantown alleges that its constitutional and statutory rights have been violated, which would certainly constitute "at least a minimal degree" of hardship. *Neb. Pub. Power Dist.*, 234 F.3d at 1039; *cf. First Lutheran Church v. City of St. Paul*, 326 F. Supp. 3d 745, 759 (D. Minn. 2018) (citations omitted) (noting that "violations of RLUIPA and the First Amendment constitute irreparable injury in the preliminary-injunction context").

Defendants argue that Steelmantown's claims are not ripe because "the current County moratorium on green burials would bar the creation of [its] proposed cemetery use today." ECF No. 20 at 15. But that puts the cart before the horse. A key issue in this case is whether Steelmantown has a right to have its documents recorded under Chapter 307. Assuming the Court ultimately determined that Steelmantown does have such a right, that would only establish Steelmantown's right to use the Property as a private cemetery. This would be true regardless of the type of burials Steelmantown intends to conduct. And Steelmantown still would be subject to state law and the County's zoning rules. Whether Steelmantown could begin conducting green burials, specifically, before Interim

11

Ordinance 41 is lifted or expires is a separate question that would require analysis of whether the moratorium itself violates Steelmantown's rights. The same is true as to whether, as Defendants suggest, the County could lawfully modify its zoning rules to prohibit Steelmantown from ever performing green burials on the Property. *See* ECF No. 13 at 28. Those questions are not before this Court; the question of whether Steelmantown, based on the specific allegations in its complaint, has a statutory or constitutional right to establish a private cemetery on the Property is.

For these reasons, the Court finds that Steelmantown's claims are ripe for adjudication.

## II.    Failure To State a Claim

To overcome a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 570 (2007). A claim is facially plausible where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Brokken v. Hennepin County*, 140 F.4th 445, 450 (8th Cir. 2025). The complaint must offer more than "labels and conclusions," and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 500 U.S. at 555). Likewise, the Court need not resolve questions of law in the

plaintiff's favor and "may dismiss a claim founded upon a legal theory which is 'close but ultimately unavailing.'" *Wilson v. Dryden*, 169 F. Supp. 2d 1010, 1012 (D. Minn. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

###    A.    Applicability of Chapter 307

Chapters 306 and 307 control the creation, organization, and governance of cemeteries in Minnesota. *See* Minn. Stat. §§ 306.01 *et seq.*, 307.01 *et seq.* Since 1911, Chapter 306 has stated that all cemeteries "started or established" in Minnesota, "except cemeteries established by religious corporations," are deemed to be "public cemeteries." 1911 Minn. Laws, ch. 385; *see* Minn. Stat. § 306.87, subd. 3. Despite being titled "Public Cemeteries," the provisions of Chapter 306 generally apply even to private cemeteries. *See* Minn. Stat. § 306.01 (stating that private cemeteries established after March 1, 1906, "shall be organized and governed by" Chapter 306). Chapter 307, on the other hand, applies exclusively to private cemeteries and provides a process for private persons and religious corporations to establish such cemeteries. *See* Minn. Stat. § 307.01.

A central issue in this case is whether the language of Section 306.01 limits or supersedes the language of Section 307.01 or the provisions of Chapter 307 more broadly. *See* ECF No. 13 at 8 (arguing that "the interplay of Section 306.01 and Section 307.01 is at the heart of this case")); ECF No. 17 at 42 (stating that the "underlying theme" of Steelmantown's claims "pertains to the application of Chapter 307"). Defendants argue that the plain language of Section 306.01 means Steelmantown may establish its proposed private cemetery only under Chapter 306 because it clearly would be established after March 1, 1906. ECF No. 13 at 9; *see* Minn. Stat. § 306.01. Steelmantown asserts that

because it identifies as a "religious corporation," it is lawfully entitled to avail itself of the platting procedures articulated in Section 307.01.  *See* ECF No. 4 ¶ 11.

Therefore, before addressing whether Steelmantown has stated plausible claims under the First Amendment, the Minnesota Constitution, and RLUIPA, the Court first considers whether Chapter 307, and specifically Section 307.01, applies to Steelmantown. In short, it does not.

### i.    *Nesgoda v. County of Le Sueur*

Defendants primarily argue that Steelmantown fails to state a claim because it may not establish a private cemetery under Chapter 307 in light of the language of Minn. Stat. § 306.01, which states that "private cemeteries established after" March 1, 1906, "shall be organized and governed by" Chapter 306.  *See* ECF No. 13 at 7–13.  During the pendency of these proceedings, the Minnesota Court of Appeals issued its decision in *Nesgoda v. County of Le Sueur*, No. A25-0112, 2025 WL 2902039 (Minn. Ct. App. Oct. 13, 2025), discussing the scope of Section 306.01 and holding that it does not preclude the establishment of new private cemeteries under Section 307.01.

In *Nesgoda*, the appellant was a private person who submitted a plat application to local municipal officials to establish a new private cemetery.  *See id.* at *1.  The officials rejected the appellant's plat application, stating that "private cemeteries are not authorized by current Minnesota law."  *Id.*  On appeal, the Minnesota Court of Appeals rejected the argument that Section 306.01 "controls the establishment of new private cemeteries," explaining:

> [S]ection 306.01 does not address whether, or under what circumstances, a private cemetery may be *established*. By its plain terms, the statute addresses only how a private cemetery is to be *organized* and *governed*. In doing so, it explicitly acknowledges that private cemeteries may still be established after March 1, 1906.

*Id.* at *2.

The Minnesota Court of Appeals also addressed the effect of Minn. Stat. § 306.87, which excludes "cemeteries established by religious corporations" from Chapter 306's definition of "public cemeteries," and explained that "at most, Minn. Stat. § 306.87, subd. 3, makes provisions of chapter 306 applicable to private cemeteries which are established." *Id.* at *3. The court ultimately concluded that:

> Minn. Stat. § 307.01 unambiguously allows a person to establish a private cemetery on their land and directs that they do so through the platting process. Minnesota Statutes sections 306.01 and 306.87, subdivision 3, are not to the contrary. While those statutes make chapter 306 applicable to private cemeteries, at least in certain respects, they do not apply to the establishment of private cemeteries or the platting process.

*Id.*

At the hearing on Defendants' motion to dismiss, Defendants argued that *Nesgoda* is not binding because it is a nonprecedential decision.[4] But while decisions of the Minnesota Court of Appeals designated as "nonprecedential" generally are not "binding authority," they "may be cited as persuasive authority." Minn. R. Civ. App. P. 136.01, subd. 1(c). Absent any current controlling authority from the Minnesota Supreme Court on this issue—which neither the parties nor this Court has identified—this Court must

---

[4]     The Court notes that *Nesgoda* is currently under review by the Minnesota Supreme Court. *See* Order, *Nesgoda v. County of Le Sueur*, No. A25-0112 (Minn. Dec. 31, 2025).

"follow decisions of the intermediate state court when they are the best evidence of Minnesota law." *Neth. Ins. Co. v. Main St. Ingredients, LLC*, 745 F.3d 909, 913 (8th Cir. 2014) (citation omitted).

Defendants also attempt to distinguish *Nesgoda* by highlighting that the appellant in *Nesgoda* was a private person, not a religious corporation.  Defendants contend that *Nesgoda*'s holding should be limited to Chapter 307's application to private persons because it does not explicitly address Chapter 307's application to religious corporations. Defendants note that, unlike private persons, "religious corporations" are expressly contemplated as owning private cemeteries in Chapter 306.   *See, e.g.*, Minn. Stat. §§ 306.02, 306.027.

The Court does not read *Nesgoda* so narrowly.  While it is true that *Nesgoda*'s holding does not expressly state that religious corporations may establish new private cemeteries under Section 307.01, that issue was not before the Minnesota Court of Appeals. Regardless, *Nesgoda* is clear: although Section 306.01 extends certain provisions of Chapter 306 to the *organization* and *governance* of private cemeteries, it does not supplant the procedures articulated in Section 307.01 as to the *establishment* of private cemeteries. *See Nesgoda*, 2025 WL 2902039, at \*2–3.  This Court reads Section 306.01 the same way. And Section 307.01 unambiguously states that "[a]ny private person *and any religious corporation* may establish a cemetery on the person's or corporation's own land."  Minn. Stat. § 307.01 (emphasis added).  If the Minnesota Legislature intended for Section 307.01 to apply exclusively to private persons, it surely would have amended the statute to remove

16

its reference to religious corporations.[5]  Further, under Minnesota law, courts must "avoid interpretations that would render a word or phrase superfluous, void, or insignificant, thereby ensuring each word in a statute is given effect."  *Hagen v. Steven Scott Mgmt., Inc.*, 963 N.W.2d 164, 170 (Minn. 2021) (citation omitted).

Therefore, in accordance with *Nesgoda*, the Court agrees with Steelmantown that Section 307.01 is a viable option for establishing new private cemeteries in Minnesota for the types of persons and entities that fall within its scope.[6]  2025 WL 2902039, at *2–3.

### ii.     Application of Section 307.01

Notwithstanding the holding in *Nesgoda*, Steelmantown is not entitled to establish a private cemetery under Section 307.01 because Steelmantown is neither a "private person" nor a "religious corporation" under Minnesota law.  This is the case even though Steelmantown refers to itself as, and alleges its belief that it is, a "religious corporation."  *See, e.g.*, ECF No. 4 ¶¶ 11, 41, 57–58.  That is because in Minnesota, that term refers to a

---

[5]     Indeed, the Minnesota Legislature has added or amended other provisions of Chapter 307 to clearly state that various provisions of Chapter 306 apply to private cemeteries "subject to the provisions of" Chapter 307.  *See* Minn. Stat. §§ 307.11, 307.115.

[6]     Even if the Minnesota Supreme Court rejects the holding in *Nesgoda*, that does not change the result here for at least three reasons.  First, as noted, *Nesgoda* involves a private person who sought to establish a private cemetery under Section 307.01, not a religious corporation, 2025 WL 2902039, at *1, so the Minnesota Supreme Court's analysis is unlikely to address Section 307.01's application to religious corporations.  Second, to the extent the Minnesota Supreme Court broadly finds Section 307.01 to be invalid, even for religious corporations, such a holding necessarily would preclude Steelmantown from using Section 307.01.  Third, and most important, Steelmantown is not a religious corporation for the reasons discussed in Part II.A.ii herein, so Section 307.01 does not apply to Steelmantown in any event.

specific type of entity that is incorporated under Minnesota Statutes Chapter 315 ("Chapter 315").  *See* Minn. Stat. §§ 315.01 *et seq.*  It is not merely a descriptive term; that is, it does not mean a corporation whose "identity and mission" are "derived from religious or spiritual traditions."  ECF No. 4 ¶ 41.  Steelmantown acknowledges that it "was not organized under" Chapter 315, *id.* ¶ 48, and that, instead, it is registered under Minnesota Statutes Chapter 303 ("Chapter 303") and is recognized in Minnesota as a foreign nonprofit corporation, *id.* ¶¶ 10, 49, 178.  As a result, it is not the type of entity that has a statutory right to establish a private cemetery under Section 307.01.

Despite acknowledging that it is not incorporated under Chapter 315, Steelmantown nonetheless asserts that it should be treated as a "religious corporation" for purposes of Section 307.01.  *See* ECF No. 4 ¶ 58.  But Steelmantown cites no authority for the proposition that a business entity that is incorporated under and governed by one set of statutes may self-identify and be legally recognized as another type of business entity that is governed by an entirely different set of statutes.

A private corporation in this country "can exist only under the express law of the state or sovereignty by which it was created."  *Chi. Title & Tr. Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp.*, 302 U.S. 120, 124–25 (1937).  Therefore, as a "creature of statute," a corporation only "has such rights and responsibilities, such powers and limitations, as are accorded it by the legislature."  *Kopio's, Inc. v. Bridgeman Creameries, Inc.*, 79. N.W.2d 921, 923 (Minn. 1956).  These fundamental principles of corporate law are so well established that they cannot even remotely be called controversial.  *See, e.g., Head & Amory v. Providence Ins. Co.*, 6 U.S. (2 Cranch) 127, 166 (1804) ("It is a general rule that

18

a corporation can only act in the manner prescribed by law."). Steelmantown's assertion that there is no "law or other legal authority" that requires "a separate filing" to be recognized as a religious corporation, ECF No. 4 ¶¶ 12–13, is unsupported and unequivocally contradicted by Chapter 315, *see, e.g.*, Minn. Stat. § 315.21.

Steelmantown acknowledges that because it is registered as a foreign nonprofit corporation, it is subject to the provisions of Chapter 303. ECF No. 4 ¶ 47; *see also* Minn. Stat. § 317A.061, subd. 2 ("[A] foreign nonprofit corporation is subject to chapter 303."). As such, Steelmantown has "the same rights and privileges" it would possess if it was registered as a domestic nonprofit corporation. Minn. Stat. § 303.09. The Minnesota statutes governing domestic nonprofit corporations, however, "do[] not apply to cooperative associations, public cemetery corporations and associations, and *private cemeteries*," nor do they apply to "religious corporations" (subject to exceptions that do not apply here). Minn. Stat. § 317A.051, subds. 1–2 (emphasis added).

Moreover, Steelmantown's home state of New Jersey, like Minnesota, recognizes religious corporations as a separate type of entity from nonprofit corporations. *See* N.J. Stat. §§ 16:1-1 *et seq.* (governing religious corporations); *id.* §§ 15a:1-1 *et seq.* (governing nonprofit corporations). Steelmantown is incorporated there as a nonprofit corporation, not a religious corporation. ECF No. 4 ¶¶ 9, 39. There simply is no basis for Steelmantown to claim that it is a religious corporation under Chapter 315 when, in fact, it is registered as a foreign nonprofit corporation under Chapter 303. *See id.* ¶ 47. And Steelmantown cannot claim it should be recognized as a foreign religious corporation under Chapter 303

19

because it also is not registered as a religious corporation in its home state of New Jersey. *Id.* ¶¶ 9, 39.

In sum, Section 307.01 may be used to establish new private cemeteries in Minnesota. *See Nesgoda*, 2025 WL 2902039, at *2–3. Steelmantown is correct there. But because Steelmantown is registered and recognized as a foreign nonprofit corporation, not a religious corporation, Steelmantown is not the type of entity that falls under that statute's scope. *See* Minn. Stat. § 307.01 ("Any private person and any religious corporation may establish a cemetery on the person's or corporation's own land."). Defendants are correct there.

**B.    Steelmantown's Claims**

With that context, Steelmantown claims that Chapter 307's requirement that Steelmantown be incorporated under Chapter 315 to establish a private cemetery, either on its face or as applied: (1) violates the First Amendment's Religion Clauses and the Minnesota Constitution, *see id.* ¶¶ 213–17, 227, 243–47 (Counts II and III); (2) the "Church Autonomy Doctrine," *see id.* ¶¶ 264–73 (Count IV); and (3) RLUIPA, *see id.* ¶ 298 (Count V).[7]  For the reasons below, the Court finds that Steelmantown has not stated a plausible claim for relief under any of its theories.

---

[7]    Plaintiffs also asserted as Count I a claim under the Fifth Amendment to the U.S. Constitution and Article I, § 13 of the Minnesota Constitution alleging that Defendants' conduct and application of Minnesota law and the County's zoning ordinances amounted to a regulatory taking.  *See* ECF No. 4 ¶¶ 160–203.  At the hearing on Defendants' motion to dismiss, counsel for Plaintiffs stated that Plaintiffs have abandoned that claim and intend to proceed only on their remaining claims. As such, the Court dismisses that claim.  *See Riley v. Bondi*, 606 U.S. 259, 273 (2025) ("If a party neglects to raise, concedes, or waives an issue, a court generally has no obligation to consider it.").

### i.    Section 1983

The First Amendment's Religion Clauses provide that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. Steelmantown brings its First Amendment claims under 42 U.S.C. § 1983. *See* ECF No. 4 ¶ 6. Under *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978), a municipality and its officials acting in their official capacities, like the County and County Officials here, may be liable under § 1983 "if the constitutional violation resulted from an official municipal policy." *Brabbit ex rel. Bild v. Capra*, 59 F.4th 349, 354 (8th Cir. 2023). "Hence, the existence of a constitutional violation is a threshold issue for a *Monell* claim to move forward." *Rusness, v. Becker County*, 31 F.4th 606, 617 (8th Cir. 2022). Steelmantown has not alleged sufficient facts to make that threshold showing.

### a.    Establishment Clause (Count II)

"'The clearest command of the Establishment Clause' is that the government may not 'officially prefer' one religious denomination over another." *Cath. Charities Bureau, Inc. v. Wis. Lab. & Indus. Rev. Comm'n*, 605 U.S. 238, 247 (2025) (citation modified) (quoting *Larson v. Valente*, 456 U.S. 228, 244 (1982)). "This principle of denominational neutrality bars States from passing laws that 'aid or oppose' particular religions." *Id.* at 247–48 (quoting *Epperson v. Arkansas*, 393 U.S. 97, 106 (1968)). As such, "[w]hen a state law establishes a denominational preference, courts must 'treat the law as suspect.'" *Id.* at 248 (quoting *Larson*, 456 U.S. at 246).

As an initial matter, both Steelmantown's and Defendants' arguments refer to elements of, or rely upon, the test articulated by the Supreme Court in *Lemon v. Kurtzman*,

21

403 U.S. 602 (1971), for the purpose of analyzing Establishment Clause claims. *See* ECF No. 13 at 22 n.7; ECF No. 17 at 36–37; *see also Lemon*, 403 U.S. at 612–13 (articulating the *Lemon* test factors). The Supreme Court "long ago abandoned *Lemon*," however, and "has instructed that the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 534–35 (2022) (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014)). Therefore, in Establishment Clause cases, "the plaintiff has the burden of proving" that the facts it alleges "align with a historically disfavored establishmentarian practice." *Firewalker-Fields v. Lee*, 58 F.4th 104, 122 n.7 (4th Cir. 2023) (citing *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 25 n.6 (2022)); *accord New Doe Child #1 v. United States*, 901 F.3d 1015, 1021 (8th Cir. 2018) (quoting *Galloway*, 572 U.S. at 577) ("Where 'history shows that the specific practice is permitted,' we typically need go no further; the Establishment Clause claim fails.").

Steelmantown neither plausibly alleges facts nor argues that Section 307.01's exclusion of non-religious corporations from establishing private cemeteries "align[s] with a historically disfavored establishmentarian practice," *Firewalker-Fields*, 58 F.4th at 122 n.7, or otherwise was not historically permitted, *see New Doe Child*, 901 F.3d at 1021. To the contrary, Steelmantown favorably cites and discusses the legislative histories of Section 307.01 and other related statutes, which have existed in some form or another since at least 1905, in support of its argument that it is a "religious corporation" and, therefore, should not be excluded from establishing its private cemetery under Section 307.01. *See* ECF No. 17 at 25–29. For that reason alone, Steelmantown has not stated a plausible

22

Establishment Clause claim.  *See New Doe Child*, 901 F.3d at 1021; *Firewalker-Fields*, 58 F.4th at 122 n.7.

That aside, establishing and operating a cemetery of any sort is not inherently or exclusively a religious practice, and Section 307.01 on its face does not "aid or oppose particular religions" or "establish[] a denominational preference." *Cath. Charities Bureau*, 605 U.S. at 247–48 (internal quotation marks omitted) (citations omitted).  The statute expressly authorizes "any private person" or "any religious corporation," regardless of whether they adhere to any religious faith, to establish a private cemetery on land the person or corporation owns.  *See* Minn. Stat. § 307.01.  The statute's reference to "any religious corporation," meaning those incorporated under Chapter 315, establishes only a preference toward a specific type of incorporated entity, not a particular religious faith or denomination.  Indeed, Chapter 315 does not compel those seeking to establish a religious corporation to divulge *any* information about their religious beliefs or practices (or lack thereof), much less show any preference toward particular religious faiths or institutions.[8] Minn. Stat. § 315.21, subd. 1.

Steelmantown's amended complaint contains no facts that support its bare, conclusory assertion that the relevant statutes, on their face or as applied, "favor[] one type of religious faith over" Steelmantown's.  ECF No. 4 ¶ 213.  For example, the amended

---

[8]    Minn. Stat. § 315.21, subd. 1, provides that "at least three members" of an organization "may become a [religious] corporation by adopting and signing a certificate containing: (1) its name, general purpose and plan of operation, and its location; and (2) the terms of admission, qualification for membership, selection of officers, filling vacancies, and way it is to be managed."  That is all that is required.

23

complaint does not contain a single factually supported allegation that Defendants have ever authorized a non-religious corporation or other type of business entity to establish a private cemetery under Section 307.01. Nor does it contain any facts that support Steelmantown's speculative assertion that Defendants "specifically rejected" Steelmantown's survey and plat map because of any hostility toward Steelmantown's plan to establish a green burial cemetery or to permit people of various faith backgrounds "to use the planned cemetery." *See id.* ¶ 216. Steelmantown's plat map and survey offer no indication about its burial practices and to whom it would offer such services, ECF Nos. 4-1, 4-5. And there are no plausible allegations that the County Recorder was aware of anything other than Steelmantown's intention to establish a *private* cemetery—not specifically a *green burial* cemetery—at the time she declined to record Steelmantown's documents. It may be true that "[c]ertain residents" of the County "opposed" Steelmantown's proposed cemetery, ECF No. 4 ¶ 142, but imputing any discriminatory animus to Defendants based on the views of various County residents who had nothing to do with the County Recorder's decision is purely speculative. *Cf. Gallagher v. Magner*, 619 F.3d 823, 831–32 (8th Cir. 2010) (citations omitted) (explaining that "statements by nondecisionmakers" do not establish "a specific link between the alleged discriminatory animus and the challenged decision" in the context of Fair Housing Act claims).

Steelmantown also asserts that the County Officials lobbied the Minnesota Legislature to impose the state-level moratorium on green burials to prevent Steelmantown from establishing its proposed cemetery, ECF No. 4 ¶¶ 151–52, and implies that the County Officials later enacted Interim Ordinance 41 for the same purpose, *see id.* ¶¶ 156–59.

24

Although this conduct evidently raises Steelmantown's suspicion about Defendants' intentions, Steelmantown does not allege that these actions were unlawful or impermissible on their face, nor does it directly challenge the lawfulness of Interim Ordinance 41 itself. Steelmantown's pleadings must raise "more than a sheer possibility" that Defendants "acted unlawfully" to state a plausible claim. *Iqbal*, 556 U.S. at 678. Indeed, the only non-speculative allegation Steelmantown makes regarding the intent of Interim Ordinance 41 is a statement Reed made at the County Board of Commissioners meeting when the Ordinance was enacted: "[I]t is nice for a change, in a public discussion, we could talk about doing it because of science and not because of somebody's prejudices." ECF No. 4 ¶ 159. The Court finds it difficult to see how this statement, which expressly disclaims making decisions based on "prejudices," could possibly be construed as hostile or discriminatory towards Steelmantown or its religious beliefs and practices.

Finally, the Court observes that while Steelmantown alleges that Section 307.01 unconstitutionally "favors one type of religious faith over another," *id.* ¶ 213, Steelmantown also demands that it be treated as a religious corporation under Minnesota law even though it acknowledges that it "was not organized" under Chapter 315, *see id.* ¶¶ 48, 58. Steelmantown asks this Court to declare that it can establish its private cemetery under Section 307.01 and require the County to record its documents, *see id.* at 64–67, even though Steelmantown is categorically outside the statute's scope. In other words, Steelmantown effectively seeks preferential treatment because of its religious beliefs that a secular but otherwise identical institution—that is, a foreign nonprofit corporation whose "identity and mission" are not "derived from religious or spiritual traditions," *id.* ¶ 41—

25

would not receive in the same circumstances.  If anything, that outcome would appear to be closer to a violation of the Establishment Clause than the conduct Steelmantown challenges here.  *See Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 703 (1994) (noting that "a principle at the heart of the Establishment Clause" is "that government should not prefer one religion to another, or religion to irreligion").

Because Steelmantown's pleadings do not plausibly allege that the relevant statutes, on their face or as applied, "establish[] a denominational preference," the Court sees no reason to treat them as "suspect."  *Cath. Charities Bureau*, 605 U.S. at 248 (citation omitted).  And Steelmantown does not plausibly allege or argue that Section 307.01's limitations were not historically permitted.  *See New Doe Child*, 901 F.3d at 1021; *Firewalker-Fields*, 58 F.4th at 122 n.7.  Accordingly, Steelmantown's Establishment Clause claim is dismissed.

### b.    Free Exercise Clause (Count III)

The Free Exercise Clause "protects religious observers against unequal treatment and against laws that impose special disabilities on the basis of religious status."  *Espinoza v. Mont. Dep't of Rev.*, 591 U.S. 464, 475 (2020) (internal quotation marks omitted) (citation omitted).  To successfully plead a violation of the Free Exercise Clause, Steelmantown "must establish that the governmental activity at issue places a substantial burden on [its] religious practice."  *Northland Baptist Church of St. Paul v. Walz*, 530 F. Supp. 3d 790, 811 (D. Minn. 2021) (citing *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008)).  "An incidental burden on religion, however, typically is insufficient to constitute a free-

exercise claim." *Id.* (citing *Emp. Div., Dep't of Hum. Servs. v. Smith*, 494 U.S. 872, 878 (1990)).

Further, the right of free exercise "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *B.W.C. v. Williams*, 990 F.3d 614, 620 (8th Cir. 2021) (quoting *Smith*, 494 U.S. at 879). A law is not neutral "if the object of [the] law is to infringe upon or restrict practices because of their religious motivation." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). A law is not generally applicable "if religious observers are subject to unequal treatment, namely, if 'a legislature decides that the governmental interests it seeks to advance are worthy of being pursued only against conduct with a religious motivation.'" *Riverside Church*, 205 F. Supp. 3d at 1042 (quoting *Lukumi*, 508 U.S. at 542–43).

The statutes at issue here are both neutral and generally applicable. Neither Section 307.01 nor Chapters 307 and 315 more broadly, either on their face or as applied as alleged here, categorically prohibit any of the religious beliefs Steelmantown alleges it has or restrict any of the religious practices in which Steelmantown intends to engage on the Property. Quite the opposite: Chapters 306 and 307 expressly contemplate the establishment or existence of green burial cemeteries. *See* Minn. Stat. §§ 306.991, 307.14. Steelmantown alleges no facts that suggest any Defendant ever directly or explicitly communicated to Steelmantown or any other Plaintiff that it would never, under any circumstances, be permitted to establish a green burial cemetery on the Property; Defendants only told Steelmantown it could not establish a private cemetery under

27

Chapter 307. *See* ECF No. 4 ¶ 2. And even if Steelmantown were a religious corporation—which it is not—Steelmantown does not allege any instances in which Defendants authorized a different religious corporation or a non-religious corporation to establish a private cemetery under Section 307.01 while prohibiting Steelmantown from doing the same.

Steelmantown's claim, in essence, appears to be that its religious practices are burdened by the requirement to incorporate (or reincorporate) under Chapter 315 to use the platting procedure articulated in Section 307.01. But nowhere does Steelmantown allege any facts that show this requirement "significantly inhibit[s] or constrain[s]" any "conduct or expression that manifests some central tenet" of its religious beliefs, "meaningfully curtail[s]" its "ability to express adherence" to those beliefs, or denies it a "reasonable opportunity to engage in those activities." *Patel*, 515 F.3d at 813 (citation omitted). It does not explain, for instance, why maintaining its status as a foreign nonprofit corporation under Chapter 303 is central to its ability to express its religious beliefs or engage in its religious practices. Nor does Steelmantown allege facts that suggest the requirement "operates so as to make the practice of [its] religious beliefs more expensive." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 710 (2014) (citation omitted). In fact, aside from minimal fees associated with filing documents with the appropriate county recorder, *see* Minn. Stat. § 357.18, it appears Chapter 315 imposes no additional costs on an entity

28

seeking to incorporate under that chapter, *see id.* § 315.21.[9]   At most, the requirements under Chapter 315 could be characterized as procedural inconveniences but not substantial burdens on Steelmantown's religious practices.

Steelmantown's reliance on *Hobby Lobby* is misplaced.   First and foremost, that case was decided under the Religious Freedom Restoration Act ("RFRA"), which the Supreme Court acknowledged goes "far beyond" what is "constitutionally required" under the Free Exercise Clause.  *Hobby Lobby*, 573 U.S. at 706; *see also* 42 U.S.C. § 2000bb-1(a) ("Government shall not substantially burden a person's exercise of religion *even if the burden results from a rule of general applicability* . . . ." (emphasis added)).   Steelmantown does not raise a claim under RFRA here.

Furthermore, in *Hobby Lobby*, the issue was whether requiring for-profit closely held corporations to comply with a federal regulatory requirement that "violate[d] the sincerely held religious beliefs of the companies' owners," while excepting nonprofit corporations with "religious objections," violated RFRA.   573 U.S. at 689–92.   Here, as noted above, Steelmantown does not allege that Minnesota's requirement that it incorporate (or reincorporate) as a religious corporation under Chapter 315 violates Steelmantown's sincerely held religious beliefs (or those of its owners), or that it objects to that requirement

---

[9]   Chapter 315 further provides that a religious corporation "may receive in trust for a parish, mission, local church society, or congregation, *incorporated or not*, property *given*, *granted*, transferred, devised, or bequeathed to it for the use of the parish, mission, local church society, or congregation, for *religious*, charitable, or educational purposes." *Id.* § 315.24 (emphasis added).   Therefore, even if Steelmantown does not wish to reincorporate as a religious corporation, it could simply establish a separate corporate entity under Chapter 315, grant the land to the new entity, and have the new entity establish its proposed private cemetery.

29

for any religious reason.  While *Hobby Lobby* acknowledges that "organizations with religious and charitable aims" might choose a particular corporate form "because of the potential advantages of that corporate form," *id.* at 712, the Supreme Court "d[id] not hold" that "corporations and other commercial enterprises can opt out of any law (saving only tax laws) they judge incompatible with their sincerely held religious beliefs," *id.* at 692 (internal quotation marks omitted).  If that holding is true under RFRA, which goes "far beyond" what is "constitutionally required," *id.* at 706, it must also be true under the Free Exercise Clause.

At bottom, it was Steelmantown's choice to register in Minnesota as a foreign nonprofit corporation under Chapter 303, rather than as a religious corporation under Chapter 315.  The consequence of that choice is that it may not invoke the rights and privileges accorded to religious corporations under Minnesota law—including the right to establish a private cemetery under Section 307.01.  *See, e.g.*, *Kopio's*, 79. N.W.2d at 923; *Head & Amory*, 6 U.S. (2 Cranch) at 166.  That, by itself, does not constitute a substantial burden sufficient to state a claim for a violation of the Free Exercise Clause.  Accordingly, Steelmantown's Free Exercise claim is dismissed.

### ii.    Minnesota Constitution (Counts II & III)

The Minnesota Constitution "afford[s] greater protection for religious liberties against governmental action" than the First Amendment.  *Hill-Murray Fed'n of Teachers v. Hill-Murray High Sch.*, 487 N.W.2d 857, 864 (Minn. 1992).  Its Freedom of Conscience Clause provides that the government may not "control" or "interfere[] with the rights of conscience" or give "preference" to "any religious establishment or mode of worship."

30

Minn. Const. art. I, § 16.  To state a claim under the Freedom of Conscience Clause, Steelmantown must plausibly allege that "the state action burdens the exercise of religious beliefs." *Satanic Temple v. City of Belle Plaine*, 80 F.4th 864, 869 (8th Cir. 2023) (quoting *Odenthal v. Minn. Conf. of Seventh-Day Adventists*, 649 N.W.2d 426, 442 (Minn. 2002)). To establish such a burden, Steelmantown must show that "the risk of interference with religious beliefs or practice is real and not remote."  *Id.* (internal quotation marks omitted) (quoting *Edina Cmty. Lutheran Church v. State*, 745 N.W.2d 194, 204 (Minn. Ct. App. 2008)).  "For a generally applicable law," like those at issue here, "the focus is on whether compliance requires a change in religious conduct or philosophy."  *Id.* (internal quotation marks omitted) (quoting *Edina Cmty. Lutheran Church*, 745 N.W.2d at 204).

As discussed above, Steelmantown has not plausibly alleged that compliance with Section 307.01 would require "a change in religious conduct or philosophy." *Edina Cmty. Lutheran Church*, 745 N.W.2d at 204.  Again, the only religious conduct in which Steelmantown alleges it seeks to engage is establishing and operating a private, green burial cemetery.  *See* ECF No. 4 ¶¶ 69–74.  Since Steelmantown intends to establish its cemetery under Chapter 307, it must be a religious corporation within the meaning of Chapter 315. *See* Minn. Stat. § 307.01.  Steelmantown does not allege that compliance with that provision "requires a change in [its] religious conduct or philosophy" or "interfere[s] with [its] religious beliefs or practice."  *Satanic Temple*, 80 F.4th at 869 (internal quotation marks omitted) (quoting *Edina Cmty. Lutheran Church*, 745 N.W.2d at 204).  While such compliance may require a change in Steelmantown's corporate form, that is not in any way related to its "religious conduct or philosophy," nor does it burden Steelmantown's

31

religious exercise.  Steelmantown makes no such claim.  And to the extent Steelmantown alleges a change in corporate form would violate the "preference" provision of the Freedom of Conscience Clause, that claim fails for the same reasons already discussed relating to the First Amendment's Establishment Clause.

For these reasons, Steelmantown has not plausibly alleged a violation of the Minnesota Constitution's Freedom of Conscience Clause, and its claims are dismissed.

### iii.    Church Autonomy Doctrine (Count IV)

Steelmantown asserts an independent cause of action under the "church autonomy doctrine," ECF No. 4 ¶¶ 253–78, which is also known as the "ecclesiastical abstention doctrine," *Pfeil v. St. Matthews Evangelical Lutheran Church of Unaltered Augsburg Confession of Worthington*, 877 N.W.2d 528, 532 (Minn. 2016).  The principle underlying the doctrine is that courts should not intervene in disputes that cannot be resolved without "extensive inquiry" into matters of "religious law and polity."  *Wells ex rel. Glover v. Creighton Preparatory Sch.*, 82 F.4th 586, 594 n.4 (8th Cir. 2023); *see Pfeil*, 877 N.W.2d at 532–33.  The doctrine "operates as an affirmative defense to an otherwise cognizable claim." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 195 n.4 (2012); *see also Pfeil*, 877 N.W.2d at 535 (noting that the doctrine could function either "as an affirmative defense on the merits," or "as a form of abstention, as one of its names implies").

This Court is unaware of, nor does Steelmantown cite, any authority acknowledging a direct cause of action under the church autonomy doctrine.  Regardless, this matter does

not require any inquiry, "extensive" or otherwise, into "religious law and polity." *Wells*, 82 F.4th at 594 n.4. Therefore, this claim is dismissed.

### iv.    RLUIPA (Count V)

RLUIPA was enacted to provide "broad protection" against government action that affects religious exercise rights relating to land-use regulations and institutionalized persons. *Marianist Province of U.S. v. City of Kirkwood*, 944 F.3d 996, 1000 (8th Cir. 2019) (quoting 42 U.S.C. § 2000cc-3(g)). The land-use provisions provide two causes of action, both of which Steelmantown raises here: (1) a "substantial burden" claim and (2) an "equal terms" claim. *Id.* (quoting 42 U.S.C. §§ 2000cc(a)(1), 2000cc(b)(1)); *see* ECF No. 4 ¶¶ 279–316. Steelmantown has not stated a plausible claim under either provision of RLUIPA.

### a.    Substantial Burden

RLUIPA's substantial-burden provision provides that "no government shall implement a land-use regulation in a manner that 'imposes a substantial burden on the religious exercise' of an institution, unless the government demonstrates that imposing the burden (1) furthers a compelling governmental interest and (2) is the least restrictive means of furthering that interest." *Marianist Province*, 944 F.3d at 1000 (quoting 42 U.S.C. § 2000cc(a)(1)).

In *Marianist Province*, the Eighth Circuit did not squarely define the meaning of "substantial burden" in the context of RLUIPA.[10]  However, it implied that a "substantial burden" must be more than a "mere[] inconvenience[]."  *Id.* at 1001.  That comparison aligns with the definition articulated in *First Lutheran Church*, a 2018 decision from this District issued before *Marianist Province* was decided.  *See First Lutheran Church*, 326 F. Supp. 3d at 761.  In *First Lutheran Church*, the court relied on decisions from other circuits to conclude that "a government regulation substantially burdens an exercise of religion when the regulation's effects go beyond being an inconvenience to a religious institution, and instead put substantial pressure on the institution to change that exercise."  *Id.* (collecting cases); *see also Living Water Church of God v. Charter Township of Meridian*, 258 F. App'x 729, 736 (6th Cir. 2007) ("Congress has cautioned that [courts] are to interpret 'substantial burden' in line with the Supreme Court's 'Free Exercise' jurisprudence, which suggest that a 'substantial burden' is a difficult threshold to cross.").

Proceeding under the definition of "substantial burden" articulated in *First Lutheran Church* and affirmed, at least in part, in *Marianist Province*, the Court concludes that Steelmantown "has not demonstrated that its religious exercise is substantially burdened, rather than merely inconvenienced."  *Marianist Province*, 944 F.3d at 1001.  It is true that Steelmantown has been unable to establish its proposed green burial cemetery, but that is

---

[10]   *Marianist Province* involved a regulation that required a religious institution to "use feasible alternative locations for religious exercise," and the Eighth Circuit's analysis under the "substantial burden" provision relied largely on decisions of other circuits dealing with factually similar claims.  944 F.3d at 1001.  In doing so, the Eighth Circuit provided some context as to what a "substantial burden" under RLUIPA *is not*, but did not specifically articulate what it *is*.

34

not because of any "pressure on [Steelmantown] to change that exercise." *See First Lutheran Church*, 326 F. Supp. 3d at 761.  Setting aside Interim Ordinance 41—which, again, Steelmantown does not challenge here—the only obstacle standing in the way of Steelmantown establishing its proposed cemetery is that it has chosen not to incorporate under Chapter 315.  *See* Minn. Stat. § 307.01.  But while "RLUIPA assuredly protects religious institutions in their religious exercise, the statute's language indicates that it is not intended to operate as 'an outright exemption from land-use regulations.'"  *Living Water Church*, 258 F. App'x at 737 (quoting *C.L. for Urb. Believers v. City of Chicago*, 342 F.3d 752, 762 (7th Cir. 2003)); *see Westchester Day Sch. v. Village of Mamaroneck*, 417 F. Supp. 2d 477, 544 (S.D.N.Y. 2006) ("[C]ourts must ensure that the facts warrant protection under RLUIPA, rather than simply granting blanket immunity from land-use regulations."), *aff'd*, 504 F.3d 338 (2d Cir. 2007).  And as a general matter, the "costs, procedural requirements, and inherent political aspects" which are "incidental" to any intended land use "do not amount to a substantial burden on religious exercise."  *C.L. for Urb. Believers*, 342 F.3d at 761.

Moreover, "RLUIPA does not offer refuge to canny operators who seek through subterfuge to avoid laws they'd prefer to ignore."  *Yellowbear v. Lampert*, 741 F.3d 48, 54 (10th Cir. 2014) (Gorsuch, J.).  Here, Steelmantown does not assert that it would be unable to engage in its desired religious conduct—performing green burials—as a religious corporation rather than as a nonprofit corporation.  Nor does it plead facts from which the Court can infer that complying with the requirements of Chapter 315 to establish a religious corporation, thereby bringing itself within the scope of Section 307.01, is a "substantial

burden" rather than a procedural inconvenience.[11]   *See Marianist Province*, 944 F.3d at 1001; *C.L. for Urb. Believers*, 342 F.3d at 761.   Instead, the only real "burden" that Steelmantown identifies is merely that it does not believe it should have to do so.  *See* ECF No. 4 ¶¶ 12–13 (alleging Steelmantown's "belie[f] that there is no Minnesota law or other legal authority that requires it to file a separate filing . . . as a religious corporation").  That is not enough.  *See Yellowbear*, 741 F.3d at 54.  Steelmantown no doubt chose for a reason to incorporate in New Jersey as a nonprofit corporation and to register in Minnesota under Chapter 303 as a foreign nonprofit corporation.   But RLUIPA does not permit Steelmantown to unilaterally declare itself to be, or to invoke the rights and privileges of, a religious corporation under Minnesota law when it clearly is not one.  *See id.*  Nor does RLUIPA authorize Steelmantown to claim immunity from the plain requirements of Section 307.01 simply because Steelmantown wishes to engage in religious conduct on the Property.  *See Living Water Church*, 258 F. App'x at 736 (holding that "RLUIPA cannot stand for the proposition" that a religious institution is "immune" from zoning laws "simply because the institution . . . pursues a religious mission").

---

[11]      As noted, even if Steelmantown itself does not wish to incorporate (or reincorporate) as a religious corporation, it appears Steelmantown could quite easily meet the requirements of Section 307.01 by creating and incorporating a separate entity as a religious corporation and granting the Property to that entity, with essentially no cost other than the minimal fees associated with filing the appropriate documents. *See supra* at 23 n.8, 28 n.9; Minn. Stat. § 357.18, subds. 1, 3; *see also S.J. Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1035 (9th Cir. 2004) (holding that requiring a religious institution to comply with generally applicable procedural requirements relating to land-use regulations that "do not render religious exercise effectively impracticable" is not a substantial burden).

Again, the impediment to Steelmantown's plans is the corporate form it chose, not the statutes at issue here. The statutes do not require any change to Steelmantown's religious practices as alleged. *See First Lutheran Church*, 326 F. Supp. 3d at 761. And by insisting, without any factual or legal support, that it is a "religious corporation" under Minnesota law, Steelmantown plainly "seek[s] through subterfuge to "avoid laws [it would] prefer to ignore." *Yellowbear*, 741 F.3d at 54. Therefore, the Court finds that Steelmantown has not stated a substantial burden claim under RLUIPA.

### b.      Equal Terms

To state an equal-terms claim under RLUIPA, Steelmantown must show that the County "imposed or implemented a land-use regulation" on it that "treats [it] on less than equal terms with a nonreligious . . . institution.'" *Marianist Province*, 944 F.3d at 1001 (quoting 42 U.S.C. § 2000cc(b)(1)). The Eighth Circuit observed in *Marianist Province* that "[o]ther circuits to consider the issue have held that, to meet the standard for an as-applied equal terms challenge, the plaintiff must demonstrate that the government entity has treated a religious institution less favorably than a 'similarly situated' secular institution." *Id.* at 1001–02 (citations omitted). But the Eighth Circuit noted that at least one circuit has held that "while the equal terms provision has the feel of an equal protection law, it lacks the similarly situated requirement usually found in equal protection analysis," *id.* at 1002 (internal quotation marks omitted) (citation omitted). The Eighth Circuit ultimately declined to "decide whether to adopt the 'similarly situated' requirement" because the record in *Marianist Province* showed that the religious institution at issue "was not treated less favorably." *Id.*

37

This Court need not resolve that question either.  The issue is even clearer here because Steelmantown does not plead a single plausible factual allegation suggesting that any secular institution (or religious one, for that matter) or any non-religious corporation has been treated more favorably by Defendants when attempting to establish private cemeteries under Section 307.01.  Steelmantown identifies that green burial cemeteries have been established in other municipalities across Minnesota.  *See* ECF No. 4 ¶ 78.  Steelmantown does not, however, plead any facts showing that those green burial cemeteries were private cemeteries.  Nor does Steelmantown plead that they were established under Section 307.01.

Instead Steelmantown rests this claim on speculative and conclusory allegations of discriminatory conduct and unequal treatment.  That is not enough to state a plausible claim for relief.  *See Iqbal*, 556 U.S. at 678.  Accordingly, Steelmantown's RLUIPA claims are dismissed.

## CONCLUSION

*Nesgoda* proved Steelmantown correct that religious corporations may establish private cemeteries under Section 307.01.  That, however, does not rescue Steelmantown's claims.  Steelmantown ultimately relies on "labels and conclusions," *Iqbal*, 556 U.S. at 678, to assert that it is a religious corporation that may invoke such a right under Minnesota law, *see* ECF No. 4 ¶ 11.  But Steelmantown is not a religious corporation under Chapter 315.  And to adequately state a claim for relief, Steelmantown "must assert facts that affirmatively and plausibly suggest that [it] has the rights [it] claims," not "facts that are merely consistent with such a right."  *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473

(8th Cir. 2009) (en banc) (citation omitted). Steelmantown does not do that here. Accordingly, Defendants' motion to dismiss is granted, and Steelmantown's claims are dismissed.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss (ECF No. 12) is **GRANTED**;

2. Bixby's, Loving Earth's, and Connell's claims are **DISMISSED WITHOUT PREJUDICE** for lack of standing; and

3. Steelmantown's claims are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 11, 2026                    *s/Laura M. Provinzino*
                                         Laura M. Provinzino
                                         United States District Judge